## HOOKS *v.* FIDELITY & DEPOSIT COMPANY.

Where a surety on a guardian's bond has been discharged and the guardian continued in his office upon giving new sureties, the former surety is not entitled, because of any devastavit or acts of mismanagement committed prior to the discharge of the first surety, to have the guardian pay into court the funds in his hands belonging to his ward. Nor can the outgoing surety, by proceedings instituted subsequently to his discharge, interfere with the guardian, who is continued in his office, in the discharge of his duties, because of acts of mismanagement and the failure to comply with the requirements of the law relative to his duties which occurred prior to the discharge of the first surety.

NOVEMBER 19, 1910.

Equitable petition. Before Judge Littlejohn. Sumter superior court. December 18, 1909.

The Fidelity & Deposit Company of Maryland (hereinafter referred to as the company) brought its equitable petition against

Thomas B. Hooks, alleging that on the first day of October, 1900, Hooks made written application to the petitioner to become sole security on Hooks's bond which was given as required by law for the faithful performance of the principal's duties as guardian of the personal property of certain minors. In this application Hooks entered into certain covenants and agreements relating to the manner in which he would handle the estate, and the particular methods of dealing with his wards' property, which were calculated and intended to protect the surety. There were provisions in this application, requiring Hooks to furnish the company with copies of all reports to the court connected with the estate; to keep the company indemnified against any and all loss, cost, and charges which it might incur in consequence of having executed the bond; to furnish the company an inventory of all the estate which had come into Hooks's possession; to deposit all securities belonging to the estate in a certain bank, and not to remove them except with the consent of the company; to make all investments in the manner pointed out in the application; to keep the estate so "ear-marked" that it could at all times be identified; to comply with the law in all respects touching the handling of the estate; and to do many other and divers things intended to safeguard the surety against loss. In consideration of these stipulations and certain fees paid, the company became sole surety on Hooks's bond. Petitioner alleged that Hooks failed and neglected to comply with the covenants and agreements set forth in the application. It further appears from the petition that petitioner had procured a discharge as surety on the bond in 1908. Petitioner prayed that Hooks be required to pay into court the full amount of money that he owes the said minors, or that he be required to invest said fund in securities as required by law, or that he be required to invest said fund under the orders of the superior court as provided by law.

Defendant filed a demurrer, and an answer denying the alleged violations of an agreement as contained in the application. Attached to the plea as an exhibit is the judgment of the superior court, taken upon the appeal from the court of ordinary in the proceedings instituted by the company against Hooks to be discharged as surety on the bond of the latter, which judgment is as follows:

"Now comes the defendant in the above-stated cause and withdraws his plea in said case. Wherefore, there being no issuable

plea in said case, and defendant having withdrawn his plea in open court voluntarily, it is therefore ordered and adjudged by this court that the plaintiff be and it is hereby discharged as the security on the said guardian bond of said defendant as guardian of the defendant's minor children, to wit: Jas. D. Hooks, Wm. Glenn Hooks, and Thos. B. Hooks, Jr.; and that the said defendant, T. B. Hooks, be and he is hereby required to give a new bond with security as guardian of said minor children, within thirty days from this date, to the court of ordinary in Sumter county, Georgia, in terms of the law in such cases provided. . This Nov. 24, 1908.

Z. A. Littlejohn, J. S. C. S. W. C."

Upon the hearing the evidence introduced by the plaintiff tended to show that in certain respects Hooks had not complied with the agreements made by him in the bond touching the discharge of his duties. Hooks testified, that he then had in his hands $3,000 worth of property of his wards, which he had used himself and charged to himself, and allowed his wards interest on the same; that he had never kept it separate and marked as their individual property; "that he had just merged it with the balance of his estate; had just used the money and charged it to himself;" that he had that money in hand at the time of the trial; that he had made his returns to the ordinary in January, 1909; and that he had paid all the premiums to the company for becoming surety on his bond. There was evidence sustaining the allegations of the company that it had become surety on Hooks's bond under the terms of the application above referred to. The ordinary of the county testified, in behalf of defendant, that since the proceedings against Hooks upon the part of the company to be relieved as surety on his bond, Hooks had made his returns, and that he (the ordinary) had examined those returns, found them correct, and accepted them, and passed an order to that effect. The last returns showed that Hooks had in hand $3,343.70.

At the conclusion of the testimony the court directed a verdict in favor of the petitioner. Thereupon the court decreed that Hooks pay into court the sum of money in his hands belonging to the wards. Hooks filed a motion for a new trial, which was overruled, and he excepted.

*W. W. Dykes,* for plaintiff in error.

*J. A. Ansley* and *Shipp & Sheppard,* contra.

BECK, J.  While there was uncontroverted evidence in this case showing that Hooks as guardian had failed in many respects to comply with his duty in regard to managing the estate of his wards and making his returns, and that he had not complied with the stipulations and agreements made by him in his application to the surety company, we do not think that these facts would authorize the relief sought in this case and which was granted in the decree rendered.  On the contrary, a verdict in favor of the defendant should have been directed under the testimony submitted on the trial.  The company had been discharged as surety on the guardian's bond of Hooks in 1908; and while it does not directly appear from the evidence that other sureties had been substituted in lieu of the surety discharged, it does appear that Hooks was continued in his office as guardian, that he made his returns as such subsequently to the discharge of the petitioner as surety, and that these returns had been examined by the ordinary, found correct, and accepted by him; and the presumption is that the law had been complied with and that new sureties had been substituted on the bond.  The discharged surety would not be liable for any future acts of devastavit on the part of the guardian; for such acts upon the part of the guardian prior to its discharge it was secondarily liable, the new surety being primarily liable; and the new surety was liable solely for all future acts of devastavit.  After the discharge of the company as surety, its right to interfere with or in any way direct or hamper the guardian's administration of the estate of his wards was at an end; and the right to have the court interfere for the purpose of controlling the guardian in the discharge of his duties as such, or for the purpose of removing him from his trust, belonged, not to the surety that had been discharged, but to the substituted surety or to the wards.  Why should the released surety be now permitted to interfere with the guardian in the management of the property of the ward?  As said above, while the outgoing surety and the new surety are both liable for any past devastavit, as between the two sureties the last one is primarily liable for any past devastavit and solely liable for any future devastavit.  In the case of *Snow* v. *Brown,* 100 *Ga.* 117 (28 S. E. 77), it is said: "It is clearly the purpose of the statute to release the outgoing surety as far as possible.  It is obvious that, as between himself and the obligee of the bond, he can not be released from liabilities springing from breaches of the bond occur-

ring before his release; but whenever such circumstances exist as will allow him to be released from further liability, he is entitled to as full protection as is obtainable at the time of his release. The privilege to the guardian to continue his trust by giving another bond and surety has the effect to postpone the right of the first surety to have an accounting from his principal, and thus possibly deprive him of means and measures of protection afterwards lost. The original bond being, presumably at least, ample to protect the obligee thereof for all devastavit occurring while it is of force, it could not be said that it was the purpose of the statute, in making the second surety liable for past waste, to alone protect the interests of the obligee of the respective bonds, but the principal object sought to be accomplished by this retroactive feature of the second bond is to afford to the released surety as much indemnity as possible, in view of the disadvantages to him attendant upon the postponing of his right to have his principal brought to an accounting." We are of the opinion that the guardian, unless removed for some legal cause, should be permitted, unhampered by any interference on the part of the outgoing surety, to discharge the duties pertaining to his office of guardian; and if he should be guilty of any devastavit, the last surety on the bond will be liable. And the plaintiff in this case has no need to apprehend danger or loss from any act of the guardian except those which took place prior to its discharge; and relatively to the acts of mismanagement or any devastavit committed by the guardian prior to that discharge, no relief could be rendered under the petition in this case.

*Judgment reversed. All the Justices concur.*