## 36086. NATIONAL NUGRAPE CO. *v.* CITIZENS & SOUTHERN NATIONAL BANK.

DECIDED APRIL 5, 1956—REHEARING DENIED MAY 9, 1956.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, A. G. Cleveland, Jr.,* for plaintiff in error.

*Alston, Sibley, Miller, Spann & Shackelford, Henry J. Miller,* contra.

FELTON, C. J. 1. At the outset it should be stated that it is not the contention of the plaintiff that the forged alterations changing the names of the payees of the checks to North-South Transportation Company were discoverable by the exercise of ordinary care. We understand it to be conceded by the plaintiff that the checks were prepared by R. O. Williams and presented to the countersigning officer of National NuGrape Company before he changed the name of the payees and ran them through a protectograph machine which stenciled "NuGrape" and the amount in dollars and cents on the line made for the placing of the amount of the check. We understand that it is also conceded that R. O. Williams changed the names of the payees before running the checks through the protectograph, and that the perforations made by the machine over the payees' names prevented the detection of the alteration of the payees' names. Either these facts are true or the countersigning officer countersigned the checks after the alteration was made. In either event, one to whom the checks were negotiated, without more, had a right to regard the checks as authoritatively made payable to North-South Transportation Company, and the defendant bank, after Williams opened his personal account with the defendant in the name of the transportation company, without more, had a right to assume that the checks were authoritatively made payable to R. O. Williams, individually.

It should also be noted at the outset that the petition does not allege that the plaintiff's countersigning officer conspired with R. O. Williams, and that the defendant was charged with that knowledge, nor that Williams opened his account with a check from the plaintiff.

It should be noted also that the defendant is charged with constructive knowledge that R. O. Williams was a trustee ex maleficio because of the following facts: (1) that the defendant knew that the funds in the North-South Transportation Company account were the individual funds of R. O. Williams; (2) that the defendant was charged with constructive notice since June 5, 1940, when Williams opened the account with Cecil Hester, Vice President of defendant bank, that the checks deposited by Williams in the North-South Transportation Company account were corporate checks of petitioner, signed by R. O. Williams as an

officer of petitioner and payable personally to R. O. Williams; that from time to time R. O. Williams made personal loans from defendant through Cecil Hester and other officers of defendant, and that, beginning in November, 1948, and from time to time thereafter, gave personal financial statements to defendant none of which showed any assets of any alleged company in the name of North-South Transportation Company, and that the financial statement in November, 1948, showed that his total income was $20,000 per year, and the one furnished on April 1, 1953, showed that his annual income from all sources was $25,000; (3) the fact that R. O. Williams was depositing in his North-South Transportation Company account approximately $50,000 per year should have caused Cecil Hester and other officers of the defendant to make inquiry with respect to the checks of petitioner being deposited by Williams.

2. The plaintiff bases its rights to recover on Code § 108-423 and *American Nat. Bank* v. *Fidelity & Deposit Co.*, 129 *Ga.* 126 (1) (58 S. E. 867). The Code section provides: "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the person injured." In the *American National Bank* case the court said: "If a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting; . . ."

Code § 13-2042 provides: "Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary whether bona fide or mala fide shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit or any part thereof, upon the check of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited.

Nothing herein contained shall prevent the person or corporation claiming the beneficial interest in or to any deposit in any bank from resorting to the courts to subject such deposit, provided such action is brought and served before such deposit is paid out, and to any action brought for this purpose both the bank and the depositor shall be necessary parties defendant."

To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order *to one other than the bank itself*, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the *sole inference* that a breach of trust is intended. Michie, Banks & Banking, Vol. 5A, p. 161; 7 Am. Jur. 376, § 522; Bischoff *v.* Yorkville Bank, 218 N. Y. 106 (112 N. E. 759, L. R. A. 1916F, 1059). Judge Sibley speaking for the court in Atlanta & St. A. B. Ry. Co. *v.* Barnes, 95 Fed. 2d 273, stated as to such cases: "The penalty thus visited ought to be supported by the mala fides of a fraudulent intent, or by a negligence so great as to show wilful ignorance. Simple neglect to enquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper. . . Commercial transactions are not put within the strict fetters of constructive notice." It is too well known to require citation of authority that generally a creditor who receives from a corporate officer in payment of his personal debt a check drawn by such officer on the corporation's account to the creditor's order must make restitution to the corporation. In such a case the creditor is charged with notice that the transaction is invalid. That is not the case, however, where, as in this case, the corporation's checks are deposited to the trustee's individual account and where the checks on the corporation were *countersigned* by another officer of the corporation. In such a case a signature or countersignature by another officer changes the transaction from one with fraud on its face to one showing good faith on its face. *Henderson Lumber Co.* v. *Chatham Bank & Trust Co.*, 33 *Ga. App.* 196 (125 S. E. 867). In the *Henderson* case the ruling is based on the authority of a secretary to execute the instrument. The secretary was a distinterested party, and

the holding that the seal of the corporation gave rise to the presumption that the secretary had authority to sign for the corporation does not mean that it gave rise to the same presumption as to the guilty president. It was expressly stated in that case that a corporate seal would not change the prima facie presumption that an officer of a corporation was without authority to use his company's credit for his own purposes. In this case there is no suggestion that the countersigning officer was without authority to countersign the checks, so this case, to the extent of showing authority in the signing by an officer other than the guilty one, stands on the same footing as the *Henderson Lumber Company* case. The only difference between the ruling in the *Henderson Lumber Company* case and this one is that in that case the presumption of the authority of an officer, other than the one charged with fraud, to sign the instrument arose because of the presence of the corporate seal, while in this case the presumption of the authority of the countersigning officer arises from the *failure of the plaintiff to allege that such countersigning officer lacked the authority to countersign the instruments.* The seal in the *Henderson Lumber Company* case is significant only in that it raised the presumption of the secretary's authority. If there had been no corporate seal in that case, the presumption of the secretary's authority could have appeared from the absence of allegation to to the contrary or the fact of it from definite proof of authority. The absence of corporate seals from checks is not significant, as they usually do not carry them, which fact is a matter of common knowledge. Since the bank was justified in believing that Williams was authorized by the corporation to draw the checks because they were countersigned by another disinterested official of the corporation, the question arises as to what kind of knowledge or notice was required to hold the bank guilty of aiding in the misappropriation. The bank did not have actual knowledge that Williams was a trustee. It is charged with constructive knowledge of the fact that Williams was a trustee because the deposits in the North-South Transportation Company account were not included in financial statements to the bank. Then, if such constructive knowledge is sufficient, the bank is further charged with constructive knowledge that the trust funds were being misappropriated. In cases such as this, where the creditor does not

benefit, the corporation whose officer defaults is required to show facts leading to the sole inference of mala fides. In cases' where the creditor receives the benefit of such a transaction, it would seem that the creditor should at least have actual knowledge of the fact of the trusteeship. Otherwise, instead of relieving a bank of the fetters of constructive notice the burden of constructive notice would be doubled and one fact of constructive notice would be superimposed on another. But however that may be, and assuming but not deciding that such a chain of constructive notices is sufficient, the petition in this case fails to allege facts which a jury could find were sufficient to put the bank on notice that the North-South Transportation Company account was a trust account. In deciding this question the facts on each side of the scales have been studiously examined. In 1940, R. O. Williams opened the checking account with Cecil Hester, a vice-president of the bank. It is not alleged whether when the account was opened it was opened by a deposit of a check from the plaintiff to North-South Transportation Company. The checks to North-South Transportation Company were countersigned by another officer of the plaintiff with authority to do so. This fact was sufficient to entitle the bank to rely on the bona fides of transactions and the conclusion that the funds so deposited belonged to R. O. Williams individually, regardless of whether the bank could also be of the opinion that Williams might reasonably have a transportation company which did business with the corporation for which he worked. From May, 1939, to 1944, an officer other than Williams had the sole responsibility for checking monthly bank statements against canceled checks, and Williams' activities were not discovered. The defendant was justified in believing from this fact that the checks to North-South Transportation Company were made in good faith and were authorized. From 1944 to August 24, 1953, Williams had the sole responsibility of checking the bank statements against the plaintiff's canceled checks, and the defendant was justified during that period in believing that the drawing of the checks was regular and authorized, because neither the plaintiff nor any drawee bank ever complained. On the other side of the scales, is the fact that, when Williams gave financial statements to the bank, he did not include therein the assets in the North-South Transportation Company account.

This fact alone is argued as the basis for the plaintiff's contention that the bank was charged with constructive notice that the account was a trust account. Under the allegations of the petition, no conclusion herein reached can be based on an allegation that the bank had actual knowledge of the trust account. It must be assumed that it did not. Then the pleaded facts must show that the mere omission of the account from the financial statements was enough to arouse the bank's suspicion. This they do not do. In the first place, it was not alleged that the account was first opened with a check from the plaintiff. If it was not, the officers of the bank would never have occasion to suspect the nature of the account from its omission from a financial statement, under the petition as drawn. In the second place, it is not alleged except by inference that, at the time of any financial statement, there was enough money on deposit in the account to merit its inclusion in a financial statement. In the third place, it is not alleged how or why the official of the bank who opened the account, even with one of the checks altered by Williams, should charge his memory with the facts of the deposit, and why he should have informed other officers, as there was nothing of a suspicious nature to call for such extraordinary memory or precaution. In the fourth place, the petition does not allege that the particular kind of financial statement called for the inclusion of the assets of the account, if any. In the fifth place, even if vice-president Cecil Hester had remembered the details of the opening of the account, there is no allegation as to why he should have known of the amount on deposit at the time of the first or any other financial statement, and the mere allegation that he should have been suspicious of the account under the circumstances of this case is not sufficient to have required the bank to investigate the legality of Williams' transactions. Since a lesser degree of care is required to bind a creditor bank than is required to bind one not a creditor, and since the petition does not allege facts which a jury could reasonably or intelligently find were suspicious enough to put the bank on notice that the account was a trust account as to moneys paid to it, it was under no duty to investigate the account in any event, and the court did not err in sustaining the general demurrer as to all of the checks and amounts sued for, since if the bank is not liable for the moneys

it received from the account, it follows that it would not be liable for the amounts paid out of the account to others in the due course of business.

None of the authorities cited by plaintiff requires or authorizes a different conclusion. In *American Nat. Bank* v. *Fidelity & Deposit Co.*, supra, the receiver's checks were required by court order to be countersigned by the judge, which fact the bank knew. In *American Trust &c. Co.* v. *Boone*, 102 *Ga.* 202 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167), the check was issued to J. H. Cooper as administrator, and he deposited the check to his individual account. The bank had actual knowledge that the check was made to an administrator, and was put on notice to see whether the representation of J. H. Cooper that he was sole heir of the estate was true, since the usual method of winding up estates required court action. In *Georgia R. Bank &c. Co.* v. *Liberty Nat. Bank &c. Co.*, 180 *Ga.* 4 (177 S. E. 802), the checks involved showed on their faces that they were drawn upon funds of the ward and that they were payable to a person not entitled to them. As to the second count, a guardian is a special agent of the law and the law requires all persons dealing with him to examine his authority. See also Code § 37-113.

The court did not err in sustaining the general demurrer to the petition and in dismissing the action.

*Judgment affirmed. Quillian and Nichols, JJ., concur.*