## 24701. NATIONAL FACTOR & INVESTMENT CORPORATION v. STATE BANK OF COCHRAN.

SUBMITTED JUNE 11, 1968—DECIDED SEPTEMBER 23, 1968.

*Lawson & Lawson, Roger H. Lawson,* for appellant.

*Jones, Cork, Miller & Benton, Frank C. Jones,* for appellee.

MOBLEY, Justice. The question presented in this case is whether the State Bank of Cochran is responsible to the petitioner, National Factor & Investment Corporation (hereinafter referred to as National Factor), for conversion of funds by T. L. Williams, an officer and part owner of Williams Packing Company, Inc., which funds were deposited by Williams in the State Bank of Cochran (hereinafter referred to as the bank) in a fictitious account under the name of W. C. Hardeman. The case arose when a petition was filed by National Factor against the bank to recover $70,413.10, the loss suffered by reason of Williams' conversion of funds which his corporation had assigned to National Factor as security for advancements.

Both parties filed motions for summary judgment, and supported them with affidavits. The trial judge denied the motion for summary judgment of National Factor, and granted the motion for summary judgment of the bank. National Factor appealed from the judgment denying its motion for summary judgment and from the granting of summary judgment for the bank.

The trial judge, within ten days of the order of denial of the summary judgment for National Factor, certified that this order should be subject to review. Ga. L. 1966, pp. 609, 660; Ga. L. 1967, pp. 226, 238 (*Code Ann.* § 81A-156 (h)).

1. The enumeration of errors contains eight alleged errors. The first two allege that the court erred in denying National Factor's motion for summary judgment, in not finding that the bank was liable to it, and in not finding for damages prayed for; and the third alleges that the court erred in granting summary judgment for the bank.

T. L. Williams, his wife, and son, owned and operated Williams Packing Company, a corporation engaged in the meat packing business in Cochran, Georgia. The company bank account was carried with Cook Banking Company, Cochran, Georgia. Williams opened a fictitious account in the name of W. C. Hardeman with the State Bank of Cochran in the year 1955. Checks payable to Williams Packing Company were deposited in this account, as well as individual checks to Williams, and the funds were used for paying personal obligations of Williams and obligations of Williams Packing Company. In June 1963, National Factor entered into a contract with Williams Packing Company whereunder it agreed to lend money to Williams Packing Company, and Williams Packing Company assigned National Factor title to its accounts receivable. Under the agreement, between June 1963 and June 1965, National Factor advanced to Williams Packing Company $743,842.05. Of this amount checks totaling $176,098.10 from customers of Williams Packing Company, and made payable to the company, were deposited by T. L. Williams or by his bookkeeper in the fictitious account. Some were endorsed "Williams Packing Company, For Deposit, State Bank of Cochran, Cochran, Georgia," and others, "Williams Packing Company," or "Williams Packing Company—T. L. Williams." or Williams Packing Company, Inc.—T. L. Wililams." Williams converted to his personal use funds in the defendant bank derived from collection of accounts receivable which had been assigned to National Factor as security for advancements to Williams Packing Company, and as a result National Factor suffered a loss of $70,413.10, for which this action seeks recovery.

The contention of National Factor is that the bank, through L. D. Griffin, president, and L. L. Phillips, director of the bank during this period, had knowledge of the existence of the fictitious account, of fraudulent deposits to and withdrawals from the account by Williams, and of the conversion of funds by Williams, and that Phillips personally was paid money owed to him by Williams from the fictitious account. It is further contended that Williams (now deceased) stood as National Factor's trustee ex maleficio, and that the bank, having participated in the misapplication of money of which National Factor is true owner, is liable to it for such money.

The bank relies upon *Code* § 13-2042, which provides in part: "Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary whether bona fide or mala fide shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit or any part thereof, upon the check of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited." It contends that whether Williams bona fide or mala fide deposited the money in the bank, the bank was authorized to pay the amount of the deposit upon his check signed with the name in which the deposit was entered without being accountable in any way to National Factor, unless the bank had knowledge that the depositor was misapplying funds belonging to Williams Packing Company and aided him in doing so, and that the bank did not have such knowledge.

The trial court held that the knowledge required is actual knowledge, and ruled: "Pretermitting the issue of whether knowledge of the plaintiff's trust interest by the bank is put in issue by the affidavits of G. A. Wise, Paul T. Bell and Ralph E. Moore and the other attendant circumstances, this court concludes that the specific denials of knowledge of misapplication of

funds on the part of T. L. Williams by L. L. Phillips and L. D. Griffin, the officers of defendant bank who would have knowledge of the defalcations if anyone at the bank did, are sufficient to pierce the allegations of the plaintiff's petition in this respect and to require a summary judgment for the defendant."

In applying *Code* § 13-2042, the Court of Appeals in *United States Fidel. &c. Co. v. Grimsley*, 58 Ga. App. 401 (198 SE 715), stated: "While it is true that if one aids and assists a guardian in misapplying the trust funds, with knowledge of his misconduct, such person is accountable to the cestui que trust therefor, yet the conduct of a bank in knowingly allowing a guardian to deposit trust funds in his individual account, and allowing their withdrawal upon checks signed individually, is not sufficient to charge the bank with liability therefor under the above rule."

In *Tattnall Bank v. Harvey*, 186 Ga. 752 (198 SE 724), in a unanimous opinion this court stated (at pp. 753-754): "While it is the rule that 'if a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting' (*American National Bank v. Fidelity Co.*, 129 Ga. 126, 129 (58 SE 867, 12 AC 666)), it is the general rule that every person is presumed to have the intention of discharging whatever duty the law may cast upon him (*Truluck v. Peeples*, 1 Ga. 3, 5), and that a trustee will faithfully administer the trust. *American Trust & Banking Co. v. Boone*, 102 Ga. 202, 204 (79 SE 182, 40 LRA 250, 66 ASR 167); *Munnerlyn v. Augusta Bank*, 88 Ga. 333 (4, 5), 337 (14 SE 554, 30 ASR 159), s. c. 94 Ga. 356, 358 (21 SE 575). This constitutes the underlying principle of the statute (*Code* § 13-2042), . . . [quoting it]. In accordance with the general principle thus given expression, and in view of the multitudinous transactions in the ordinary daily course of banking, such institutions are not to be hampered and the conduct of their business, in which the public has a vital interest, clogged and slackened by unreasonable restrictions and overburdens. Therefore it is the rule, supported by the overwhelming weight of authority, that the mere fact that a fiduciary deposits in a bank to his individual account

a check drawn by him in his fiduciary capacity, or transfers funds by a check from an account in the bank in his name as a fiduciary to his personal account in the bank, will not of itself charge the bank with knowledge or notice that he is misappropriating or will misappropriate such funds. [Authorities]."

In *National NuGrape Co. v. Citizens & Southern Nat. Bk.*, 94 Ga. App. 5, 14 (93 SE2d 381), (certiorari denied), the Court of Appeals, after quoting *Code* § 13-2042, stated: "To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order *to one other than the bank itself*, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the *sole inference* that a breach of trust is intended. Michie, Banks & Banking, Vol. 5A, p. 161; 7 AmJur 376, § 522; Bischoff v. Yorkville Bank, 218 N. Y. 106 (112 NE 759, LRA 1916F, 1059). Judge Sibley speaking for the court in Atlanta & St. A. B. R. Co. v. Barnes, 95 F2d 273, stated as to such cases: 'The penalty thus visited ought to be supported by the mala fides of a fraudulent intent, or by a negligence so great as to show wilful ignorance. Simple neglect to inquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper. . . Commercial transactions are not put within the strict fetters of constructive notice.' "

We accept as the correct rule that set out in *National Nu-Grape Co. v. Citizens & Southern Nat. Bk.*, 94 Ga. App. 5, supra, quoted above, that the circumstances must be such as to raise a presumption of knowledge that the party is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the sole inference that a breach of trust is intended. Thus the question is, did the bank have either actual knowledge of the misapplication, or were the circumstances such as to raise a presumption of knowledge, or did the circumstances reasonably support the sole inference that a breach of trust was intended?

National Factor relies on the stated circumstances to estab-

lish notice. The first five listed are: the fictitious nature of the account; absence of corporation resolution from Williams Packing Company authorizing deposit of its funds in a fictitious account and of signature card authorizing certain persons to make withdrawals from the account; the deposit of many checks payable to Williams Packing Company in the fictitious account; disregard by the bank of restrictive endorsements of many checks; and payment by the bank of checks drawn by Williams for his personal use.

The fictitious account was in the name of W. C. Hardeman, a living person, who had no knowledge of the account and who was a customer of Williams Packing Company. The account was opened in 1955, some eight years before the factoring agreement between National Factor and Williams Packing Company was entered into. The record is absent any reason for the account. An account in a fictitious name is recognized in Georgia. See Ga. L. 1962, pp. 156, 257 (*Code Ann.* § 109A-3—401 (2)), and *Code* § 13-2042, the latter contemplating that an account can be opened in any name and the bank may pay out the funds on checks signed in the same name as the account, where the bank has no knowledge of a fraudulent purpose of the account. The fictitious account under the circumstances would not be sufficient to alert the bank to the fact that it was fraudulent. Nor would the absence of a resolution of the corporation authorizing deposit of the funds in the fictitious account, or signature card, or disregarding the restrictive endorsements on certain checks, as there is no contention or any evidence in the record that Williams and the bookkeeper were not authorized to deposit checks payable to Williams Packing Company in the fictitious account and to restrictively endorse the checks. It would be presumed that they were, especially since Williams was an officer of the corporation, and Mrs. Grinstead was the bookkeeper, and this was a family corporation. The president and director of the bank considered and treated the fictitious account as Williams' account, and Williams Packing Company was thought by them to be Williams' personal company. *Code* § 13-2042 authorizes the bank to honor checks drawn on an account in the name of the account by the depositor of the

account. The bank may have been negligent in not determining the true facts, but this alone would not be sufficient to constitute knowledge of misapplication of funds by Williams.

The sixth circumstance relied on to show notice is that payments were made to Phillips, a director and vice president of the bank (retired and not active as an officer) by Williams from the fictitious account in payment of his personal obligation to Phillips. While the evidence is uncontradicted that Williams paid his personal obligations, which were large, from the fictitious account over the two-year period, it also shows that Phillips during that period paid to Williams a larger sum which was deposited in the fictitious account. Thus no loss occurred to the account. This account was used as a personal and company account by Williams, was so considered by the bank, and is acknowledged as such by National Factor.

The seventh circumstance relied on is the repayment to the bank of personal debts of T. L. Williams from funds deposited in the fictitious account. Since it is not disputed that this was partially a personal account of Williams, the bank was justified in charging the account in payment of his personal obligations. Furthermore, the record shows that Williams deposited the loans from the bank in the account, and deposits were made to the account from sources other than checks made payable to Williams Packing Company, more than six times the amount repaid from the account at the bank.

The eighth circumstance refers to deposit of advances from National Factor in the fictitious account. The loss suffered by National Factor did not result from mishandling of the loan funds but from misappropriation of payments made by customers, some of which were accounts receivable which National Factor held as security.

With the specific denial by the officers of the bank that they had knowledge of the misapplication by Williams of funds belonging to National Factor, we must conclude that the facts or circumstances relied upon by National Factor to show knowledge by the bank of conversion of funds by Williams do not make an issue of fact for a jury. There is no evidence of actual knowledge, or any circumstances such as would raise a presump-

tion that Williams was acting dishonestly by conversion of funds, nor were there circumstances such as would support the sole inference that a breach of trust on the part of the bank was intended, nor, in Judge Sibley's words, was there any "mala fides of a fraudulent intent" or "negligence so great as to show wilful ignorance." Atlanta & St. A. B. R. Co. v. Barnes, 95 F2d 273, supra.

The trial judge did not err in granting summary judgment for the bank, or in denying summary judgment for National Factor.

2. National Factor contends that *Code* § 13-2042 is unconstitutional in that it violates Art. I, Sec. I, Par. II of the Constitution of Georgia (*Code Ann.* § 2-102), which provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete," and the equal protection clause of the United States Constitution (*Code* § 1-815); that it violates Art. I, Sec. IV, Par. I of the Constitution of Georgia (*Code Ann.* § 2-401) in that it is a special law enacted for banks in derogation of a general law, *Code* § 108-423, which provides: "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured"; and violates Art. I, Sec. III, Par. I (*Code Ann.* § 2-301) of the Constitution of Georgia, which prohibits the grant of special privileges or immunities.

The basis of the contention is the assertion that *Code* § 13-2042 is partial to banks by relieving them of the requirements of *Code* § 108-423, while other trustees, fiduciaries, etc., are bound by its provisions. The contention is without merit, as the two Code sections are in harmony, and under either section a bank that knowingly aids a trustee or other person in misappropriating funds is liable to the injured party. See *Burkhalter v. Peoples Bank,* 175 Ga. 744 (2) (165 SE 749); *Tattnall Bank v. Harvey,* 186 Ga. 752, 753, supra; *United States Fidel. &c. Co. v. Grimsley,* 58 Ga. App. 401, 402, supra.

3. The court was in error in striking from the affidavit of Paul T. Bell, president of National Factor, the statement that L. L. Phillips, as director, and L. D. Griffin, president of the defendant bank, had knowledge of the financial relationship be-

tween National Factor and Williams Packing Company, and that L. D. Griffin had knowledge of the incorporated status of Williams Packing Company, as there are facts stated in the affidavit upon which these conclusions were based. However, this would not require a reversal of the court's judgment, as the basis of the ruling was that the bank did not have knowledge of conversion of the funds by Williams, which is the controlling issue.

4. It was not error for the court to strike the exemplification of bankruptcy pleadings attached to the affidavit of Paul T. Bell, as it was not relevant to the issue and was hearsay. The bankruptcy petition was not filed until over two months after the expiration of the period of time (May, 1963—May, 1965) pertinent to this litigation.

5. In view of the ruling heretofore made that the court properly granted summary judgment in favor of the bank, because there was no evidence that the bank had knowledge of the conversion by Williams of funds belonging to National Factor, the question of whether National Factor had a perfected security interest in funds derived from checks deposited by Williams in the fictitious account is immaterial in this litigation. That would be an issue between National Factor and the bank in the bankruptcy proceeding.

*Judgment affirmed. All the Justices concur.*