## 30192. TRUST COMPANY OF GEORGIA v. NATIONWIDE MOVING & STORAGE COMPANY, INC.

INGRAM, Justice.

This case is here on certiorari to review a split decision of the Court of Appeals construing the provisions of Code Ann. § 13-2042. The facts of the case are stated in the opinion of the Court of Appeals, reported in 134 Ga. App. 822 (216 SE2d 335), and will not be detailed here. The trial court denied motions for summary judgment made by both parties. Both appealed. The Court of Appeals reversed the denial of Nationwide's motion for summary judgment.

In brief, what happened is this: An agent of a Georgia business corporation, Nationwide Moving & Storage Co., appeared at the bank and opened an account in the name of the corporation. The bank furnished him with a corporate bank account form and he opened the account by showing himself as the general manager of the corporation and signing his individual name as the sole authorized signature for withdrawals. The agent did not furnish, and the bank did not require, any evidence from the corporation that this agent was authorized by the corporation to open the account or withdraw corporate funds therefrom in his name. Corporate funds were alleged to be deposited to the account by the agent and he drew checks against the account for over $8,000 on his individual signature. As soon as the corporation discovered the existence of the account, it notified the

bank that the corporation had never authorized the account or withdrawals from it by the agent and called on the bank to cover the loss of its corporate funds.

The basic issue is whether Code Ann. § 13-2042 protects the bank from liability in this case. The Court of Appeals decided that the bank was liable, with four judges dissenting from that judgment.

The bank relies on Code Ann. § 13-2042, which provides: "Whenever any agent, . . . either express or implied, or other fiduciary whether bona fide or mala fide shall deposit any money in any bank to his credit as an individual, or as such agent, . . . whether the name of the person or corporation for whom he is acting or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit or any part thereof, upon the check of such agent, . . . signed with the name in which such deposit was entered, without being accountable in any way to the principal, . . ."

The bank also relies on *National NuGrape v. C. & S. National Bank,* 94 Ga. App. 5 (93 SE2d 381) and *National Factor &c. Corp. v. State Bank of Cochran,* 224 Ga. 535 (163 SE2d 817) (1968). The bank claims it is insulated from liability for any misappropriation of corporate funds by the corporation's general manager. This argument assumes that § 13-2042 is applicable to the facts of this case.

What is the purpose of the statute? It is clear that the statute is designed to protect a bank from liability where an agent or fiduciary misappropriates funds of the owner in breach of his agency or trust without the bank's knowledge. The bank is not required to scrutinize every check written by a fiduciary or agent to see if the check is written in compliance with the agent's authority.

However, there is a significant distinction between the authority of the agent to issue checks once the account has been properly established and the initial authority to establish the account. Once the account is properly set up by the corporation, Code § 13-2042 does protect the bank from liability if the bank is without knowledge of the breach of duty as seen in *National Factor* and *National NuGrape,* supra.

In *National Factor,* checks payable to the corporation

were deposited into a fictitious account by the owner of the corporation. The bank was sued, not by the corporation, but by a factoring company to whom collections from accounts receivable had been assigned as security. In that case, there is no indication that the corporation itself challenged the right of the president to set up the account at the bank.

Similarly, in *National NuGrape*, Williams, who was authorized to sign checks of the plaintiff corporation, created a fictitious company. He then caused checks from the plaintiff corporation to be issued to his company thus misappropriating plaintiff's funds. He did this by fraudulently inducing another officer to countersign the checks. The plaintiff corporation sued the bank to recover the funds deposited in the account of the fictitious company alleging that the bank had knowledge that these were corporate funds misappropriated to Williams' personal use. The bank was not liable under § 13-2042. The bank there could assume that Williams was acting properly since the checks were signed by two authorized persons in plaintiff's corporation.

Banks have long been protected from liability for misuse of trust funds by fiduciaries where the bank was without knowledge of the wrongdoing. For example, in *Munnerlyn v. Augusta Sav. Bank,* 88 Ga. 333 (14 SE 554) (1891), there was no allegation that the trustee was not authorized to set up or draw from the account—only that he misappropriated the trust funds for his own use. See also *Tattnall Bank v. Harvey,* 186 Ga. 752 (198 SE 724) (1938).

Our inquiry then must focus on whether this general manager had either the authority or inherent agency power to open a corporate bank account and designate himself as the authorized signature for withdrawals.

We must reject the notion that *any* agent of a corporation, for example, a sales person, could set up a corporate account for his principal in order to deposit and then withdraw corporate funds. The first words of the statute, "Whenever any agent . . . either express or implied . . . shall deposit any money in any bank . . ." then can be read to mean that it includes an agent with authority or implied agency power to make deposits.

There is no allegation that the general manager had the actual authority to bind the corporation by setting up a bank account. See Restatement 2d Agency § 7. There were no manifestations of authority to this bank by the principal, so apparent authority is not in issue. See Restatement 2d Agency § 8. The bank, of course, may not rely on the general manager's own declarations of the extent of his authority. See *Griffith v. Federal Land Bank,* 190 Ga. 578 (10 SE2d 71) (1940), and *Davis v. Metropolitan Life Ins. Co.,* 196 Ga. 304, 321 (26 SE2d 618) (1943). See also Restatement 2d Agency § 168.

Inherent agency power is "the power of an agent which is derived not from authority, apparent authority or estoppel, but solely from the agency relation and exists for the protection of persons harmed by or dealing with a servant or other agent." Restatement 2d Agency § 8 A. Did the Trust Company have the right to rely solely on the general manager's position as general manager for the power to set up a corporate bank account and to withdraw corporate funds without a proper corporate resolution? We think not. "The title of general manager presumptively implies the power to make any contract ordinarily necessary for the usual and ordinary conduct of the business of which such person is general manager." *Harris v. Barnes,* 100 Ga. App. 412 (3) (111 SE2d 147) (1959).

Opening a corporate account and withdrawing corporate funds is not inherent in the power of a general manager. There must be an additional showing of other circumstances indicating that the power actually exists, that the principal had notice of his actions or that the principal is estopped to deny the general manager's power. See generally, Restatement 2d Agency § 73. We do not hold that a general manager can never have the authority or inherent agency power to arrange for the handling of corporate funds. See, e.g., Fidelity & Deposit Co. v. Merchants Nat. Bank, 223 Ia. 446 (273 NW 141) (1937).

The scope of a general manager's power depends on his duties and responsibilities and his actual authority. See *Raleigh & G. R. Co. v. Pullman Co.,* 122 Ga. 700 (50 SE 1008) (1905), and *Knowles v. Rome Tribune Co.,* 127

Ga. 90 (56 SE 109) (1906). The issue in this case then is the scope of this general manager's authority or power to bind his principal. In order to entitle Nationwide to a motion for summary judgment, it must establish as a matter of law that the general manager was without authority or inherent agency power to open the account. See Code Ann. § 81A-156. The affidavit in support of Nationwide's motion for summary judgment states that the bank allowed Ben Atkinson (the general manager) to withdraw funds "without having any authority from Nationwide Moving & Storage Company in the form of a corporate resolution properly executed by the corporation authorizing said Ben H. Atkinson to withdraw said funds . . ." Thus the corporation has shown that its admitted agent, Ben Atkinson, did not have a proper corporate resolution and it contends that a proper corporate resolution authorizing the opening of an account is always required. While we agree the bank could easily protect its interests by requiring a proper corporate resolution showing the agent's authority to act for the corporation, that method is not the exclusive one for establishing the existence either of authority or of inherent agency power to open a bank account for the corporation. The question of this particular general manager's authority or inherent agency power to act is still an open one since neither side has established either of these conclusions as a matter of law. Therefore, there remains a genuine issue of material fact and it was not error for the trial court to deny summary judgment to both parties.

If on remand the authority or inherent agency power of the agent Atkinson is proven, then Code Ann. § 13-2042 may apply to the case. We disagree with the majority of the Court of Appeals interpretation of the phrase, "to his credit as an individual, or as such agent," in the statute. Code Ann. § 4-304 provides that, "The form in which the agent acts is immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." Since the purported principal Nationwide was disclosed, the general manager was professing to act as agent. Under these circumstances the name under which the account was opened, either as

Nationwide by Ben Atkinson or as Ben Atkinson, agent for Nationwide, is not in itself conclusive of whether Code Ann. § 13-2042 applies to this account. If the agent is proven to have had either the authority or inherent agency power to open the account, there would then remain the additional issue, under *National Factor* and *National NuGrape,* supra, whether the bank can rely on the statute's protection in this case.

We reverse that portion of the Court of Appeals judgment which reversed the denial of Nationwide's motion for summary judgment and remand the case to the trial court to determine the extent of the agent's authority or inherent agency power, and, if applicable, whether Trust Company is liable under Code Ann. § 13-2042, *National Factor* and *National NuGrape,* supra.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED SEPTEMBER 8, 1975 — DECIDED SEPTEMBER 23, 1975.

*King & Spalding, William I. Izlar, Jr., William A. Clineburg, Jr.,* for appellant.

*Hendon, Egerton, Harrison & Glean, E. T. Hendon, Jr.,* for appellee.