74695. TRUST COMPANY BANK OF AUGUSTA N.A.
v. HENDERSON.
(364 SE2d 289)

SOGNIER, Judge.

James S. Henderson instituted action against Trust Company Bank of Augusta N.A. to recover funds allegedly misappropriated from Henderson's business by an employee and converted by the bank when it allowed the employee to endorse in blank checks made payable to the business, and cash them or deposit them to a personal checking account. The case was tried by a jury and at the close of the evidence, the trial court directed a verdict in favor of Henderson as to the checks cashed by the bank, in the amount of $5,239, and denied the bank's motion for a directed verdict as to Henderson's claim for attorney fees and liability for the proceeds of the checks deposited in the employee's personal checking account. These issues were submitted to the jury, which returned a verdict for Henderson for $66,161, representing the amount of the deposited checks, plus interest, and

for attorney fees, which the parties stipulated were $12,500. The trial court entered judgment accordingly, and the bank appeals.

The record reveals that appellee owned and operated a Ramada Inn in Augusta, Georgia. In the fall of 1984, appellee hired Thomas Muia for the position of general manager of the inn. It was part of Muia's responsibility as general manager to handle personnel, purchasing, and daily supervision of operations, including depositing operating revenues of the business into one of Ramada Inn's two bank accounts: the regular account, or the special account used to pay such items as musician fees, liquor bills, and other hotel expenses which were not charged. He was specifically authorized by appellee to endorse all checks either with a rubber stamp provided for that purpose, or by running them through the hotel's cash register, both of which provided a restrictive endorsement for deposit to the Ramada Inn's accounts. Muia had authority to write checks on the special account, but not on the regular account. In connection with his banking duties, Muia was introduced by appellee to the personnel at appellant's branch handling the Ramada Inn accounts and soon thereafter opened a personal checking account.

In February of 1985, Muia deposited to his personal account three checks made payable to Ramada Inn which he had endorsed by hand, in blank, both on behalf of the Ramada Inn and himself, and also containing his personal account number. Thereafter, from June through November, 1985, Muia made deposits to his personal account consisting of charge reimbursement checks from American Express Travel Related Services Company, Inc., all made payable to Ramada Inn and all endorsed in blank on behalf of Ramada Inn by Muia. Some also bore Muia's endorsement or account number. On one occasion, a teller questioned her supervisor regarding a Ramada Inn check Muia sought to deposit into his personal account, and was told it was proper. Other transactions typically were not questioned. One transaction was a "split deposit," in which some cash was disbursed and the remainder deposited; one American Express check was cashed by Muia with the approval of appellant's branch manager, rather than deposited to his personal account. The total amount of the checks either cashed or deposited was over $71,000.

1. Appellant contends the trial court erred by denying its motion for directed verdict with regard to its liability for the proceeds of the checks deposited to Muia's personal account because OCGA § 7-1-352 (a) protects the bank from liability to appellant. OCGA § 7-1-352 (a) provides that "[w]henever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary, whether bona fide or mala fide, shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting

or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit, or any part thereof, upon the order of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited." We do not agree that OCGA § 7-1-352 (a) is the statute which governs this case. As this court pointed out in *Bank South v. Grand Lodge &c. for Ga.*, 174 Ga. App. 777, 780 (331 SE2d 629) (1985), the legislative history of OCGA § 7-1-352 (a), resting in common law adhered to by this State for almost a century, indicates that the statute means simply that " '[w]hen a trustee [or agent or other fiduciary] deposits money in a bank, the bank has a right to assume that the money so deposited will be applied by the trustee [or agent or other fiduciary] to the proper purposes under the trust, and acting under this assumption it may lawfully pay the checks drawn by the person depositing the money, whether signed in his representative capacity or not.' " Had Muia deposited the checks in question in the case sub judice into the Ramada Inn special account (on which he had been authorized to write checks), and then proceeded unlawfully to enrich himself by writing checks on that account made payable to himself, we could agree with appellant that the bank would be protected by OCGA § 7-1-352 (a). However, such is not the case. The record indicates that appellee's claim against the bank is based on the bank's acceptance for deposit into Muia's personal checking account of checks made payable to Ramada Inn.

Contrary to appellant's argument, *National Factor &c. Corp. v. State Bank of Cochran*, 224 Ga. 535 (163 SE2d 817) (1968), is inapposite. Rather than supporting the claim made by the appellant, that case supports the distinction we draw here. In *National Factor*, the plaintiff sought to recover from the bank which paid checks drawn by one who had diverted the plaintiff's funds to the embezzler's account. Thus Code Ann. § 13-2042, the predecessor of OCGA § 7-1-352, was appropriately relied on there. The facts in *National Factor*, supra, are further distinguishable from those here as the embezzler there was the proprietor and operator of a closely held family business, and there was far less reason for the bank to be aware that anything untoward was taking place.

In the case at bar, Muia's endorsements on the checks deposited into his personal account were "forged" because, with intent to defraud, he knowingly signed and presented the checks so as to give the appearance of authority from appellee, which he did not have. See OCGA § 16-9-2 (a).

By accepting the checks for deposit into Muia's personal account, the bank converted appellee's funds. OCGA § 11-3-419 (1) (c). OCGA

§ 11-3-419 (3) would provide an exception to the bank's liability for conversion had the bank acted "in good faith and in accordance with the reasonable commercial standards" applicable to the banking business. However, good faith and commercial reasonableness are separate requirements, both of which must be met to support the defense. While appellant may have acted in good faith, it was for the jury to decide whether its acceptance of the checks for deposit into Muia's personal checking account was consistent with reasonable commercial standards. " 'In *E. L. Von Gohren v. Pacific National Bank of Washington*, . . . the court held as a matter of law that a bank which accepted checks made payable to a corporation for deposit into the *personal account* of the bookkeeper could not have acted in a commercially reasonable manner.' " *National Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga. App. 240, 244 (248 SE2d 496) (1978). "In a case involving similar circumstances . . . this court held that ' "[t]he indorsements were irregular enough on their face to raise some question as to their validity; and certainly when the checks were offered for deposit into the . . . account of one not the payee, [the bank] had a duty to inquire to ascertain the authority of [the depositor] to indorse and deposit [the payee's] checks. [The bank] could not escape its duty of inquiry by relying on the word of its customer, [the depositor], [Cits.]." ' " *Thornton & Co. v. Gwinnett Bank &c. Co.*, 151 Ga. App. 641, 647 (260 SE2d 765) (1979).

In the case at bar, the endorsements were unusual for checks made out to the Ramada Inn, in that the customary rubber stamp, containing a restrictive endorsement, was not present, nor had the checks been run through the Ramada Inn's cash register, which also provided a restrictive endorsement. This was an "irregularity" such as the jury could have concluded should have put the bank on notice and activated the bank's duty to make inquiry, particularly because here, as in *Thornton*, supra, the checks were being deposited into the depositor's personal account. In fact, this irregularity *was* brought to the bank's attention when one of its tellers questioned the propriety of depositing a check made out to the Ramada Inn, and endorsed in blank by Muia, to Muia's personal account. We do not hold that the bank could not, as a matter of law, have asserted the § 11-3-419 (3) defense, but that the matter was properly submitted to the jury. "On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]" *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 254 (1) (342 SE2d 694) (1986). As the evidence would have authorized the jury to find that the bank did not act in a commercially reasonable manner, the bank is liable to appellee for conversion, and we affirm the jury's verdict.

2. Appellant enumerates two errors which concern the trial

court's instructions to the jury.

(a) Appellant argues the trial court erred by failing to charge the jury that "[i]f you should find that Mr. Muia was authorized by actual or apparent authority to endorse checks payable to Ramada Inn, the payment of these checks would not constitute payment over a forged endorsement." However, as stated in Division 1 above, Muia's testimony admitting he endorsed the American Express Travel checks so as to have them deposited in his personal account established that Muia's endorsement of these checks was a forgery and thus, by accepting them and crediting the proceeds to Muia's personal account, appellant committed conversion under OCGA § 11-3-419 (1) (c). See generally *First Bank &c. Co. v. Insurance &c. Assn.*, 154 Ga. App. 697, 698 (1) (269 SE2d 527) (1980). Therefore, the charge requested by appellant was not applicable to the jury's inquiry (that is, whether or not appellant was liable in conversion because it acted in good faith and in accordance with reasonable commercial standards under OCGA § 11-3-419 (3)), and the failure to so charge the jury was not error. See generally *Atkinson v. Allstate Ins. Co.*, 182 Ga. App. 50 (2) (354 SE2d 866) (1987).

(b) Appellant also argues the trial court, by giving appellee's request to charge number 10, erroneously required the jury to find that Muia had authority both to endorse the checks and to deposit them into his personal account before they could find Muia was acting under apparent authority. Aside from the fact that Muia's actions in endorsing the checks constituted a forgery and thus his authority to endorse the checks was not in issue, appellant has misread the charge as given. The charge required the jury to find Muia had the authority both to endorse and to deposit the checks in order to find that "Muia had apparent authority *to act as he did.*" (Emphasis supplied.) The charge thus addressed evidentiary questions rather than questions of law under OCGA § 11-1-201 (43). Being predicated on some evidence adduced at trial, it follows that the trial court did not err by so charging. See generally *B. J. Howard Corp. v. Skinner, Wilson & Strickland*, 172 Ga. App. 180, 181 (2) (322 SE2d 306) (1984).

3. Appellant alleges the evidence was insufficient as a matter of law to support the jury's verdict because appellant is entitled to a credit for bills and obligations of appellee allegedly paid by Muia from the funds he deposited in his personal account. We find no merit in this contention. Appellant concedes that the trial court correctly charged the jury that if it found that bills and obligations of appellee were paid by Muia, then appellant was entitled to set-off or credit against the amount claimed for any sums repaid by Mr. Muia. The jury apparently did not so find, and such a finding was not mandated, as claimed by appellant, despite the fact that Muia's testimony was not directly contradicted. " "The interest of a witness in the result of

the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness.' [Cit.]" *Board of Trustees &c. v. Englade*, 256 Ga. 458, 459 (2) (349 SE2d 703) (1986). That Muia had an interest in the outcome of this litigation is beyond question. First, he was a third-party defendant in the action below. Second, his interest in minimizing the bank's liability certainly may be inferred from the fact that criminal charges relating to these same events were pending against him.

It was appellee's testimony that his operation at the Ramada Inn in Augusta had an excellent credit rating, was not experiencing any difficulty paying bills, and that it was certainly not necessary for Muia to pay them out of his personal account. In addition, the record reflects that no Ramada Inn bills were paid by Muia from his personal account until he began the embezzlement, no approval was sought or obtained by Muia for payment of the bills paid from his personal account, nor did Muia mention payment of these bills in mitigation when he first admitted his crimes. These facts indicate circumstances which are inconsistent with the truth of Muia's testimony which, coupled with Muia's interest in the outcome of the litigation, authorized the jury to disbelieve his testimony.

4. In appellant's final enumeration of error, it asserts the trial court erred by denying its motion for a directed verdict as to the issue of attorney fees. OCGA § 13-6-11 provides that "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." This section may be applied to suits in both contract and tort. *Jones v. Spindel*, 122 Ga. App. 390, 391 (3) (177 SE2d 187) (1970).

We agree with appellant that there is no issue of "bad faith" here. (See Division 1.) While issues of stubborn litigiousness are normally for the jury, if there is a *bona fide* controversy, there can be no stubborn litigiousness as a matter of law. *Woodson v. Burton*, 241 Ga. 130, 131-132 (4) (243 SE2d 885) (1978). While the record does reflect that with respect to the amounts *cashed*, rather than deposited into Muia's account, appellant first admitted liability but then insisted on litigating this issue, the total amount of funds in this category was a minimal portion of the total liability — less than $5,300 out of a total amount of over $71,000 plus interest. Even assuming, *arguendo*, that appellant was unnecessarily litigious with respect to that one issue, we do not find it sufficient to support the award of attorney fees. We therefore affirm with direction that the $12,500 awarded as attorney

fees be written off.

*Judgment affirmed with direction. Deen, P. J., Banke, P. J., Pope, and Beasley, JJ., concur. McMurray, P. J., Carley, and Benham, JJ., dissent. Birdsong, C. J., disqualified.*

McMurray, Presiding Judge, dissenting.

As I construe the facts of the case sub judice, Mr. Muia's responsibilities, as general manager of plaintiff's Ramada Inn facility, included the acquisition and termination of personnel, purchasing food, beverages and other supplies and supervising the daily operations of the business. Mr. Muia was also responsible for depositing operating revenues of the business into Ramada Inn's accounts at the Trust Company Bank of Augusta, N.A. (the bank). In this capacity, Mr. Muia was authorized by plaintiff to endorse all checks and he was instructed by plaintiff to endorse the checks with a "rubber stamp" or "by running the checks through the [hotel's] cash register." (Both the "rubber stamp" and the cash register contained a restrictive endorsement.) While Mr. Muia was not authorized to execute checks on Ramada Inn's regular checking account, he did have express authority to execute checks on a special checking account used by Ramada Inn to pay musicians, purchase liquor and acquire other supplies and services that could not be charged by the hotel.

Upon Mr. Muia's employment, the plaintiff brought him to the bank and introduced him to the bank's branch manager as " 'the new general manager of the Ramada Inn here in Augusta.' " Soon thereafter, Mr. Muia opened a personal checking account at the bank.

In conducting Ramada Inn's financial transactions, Mr. Muia visited the bank "[j]ust about every day." He became familiar with the bank's employees and often invited the bank's tellers to "come to the Ramada Inn for happy hour . . ."

On February 15, 1985, Mr. Muia presented for deposit into his personal account three checks made payable to Ramada Inn and drawn on the accounts of Champion International Corporation, Cain & Bultman, Inc., and Southern Wood Piedmont Company. The bank deposited the checks into Mr. Muia's personal account. These checks were endorsed in blank on behalf of Ramada Inn and also contained the endorsement of Thomas Muia and his personal account number.

From June 20, 1985, through November 1985 Mr. Muia deposited into his personal account several checks made payable to Ramada Inn and drawn on the account of American Express Travel Related Services Company, Inc. (American Express Travel). One of these transactions was a "split deposit" where Mr. Muia received $1,750 in cash and the balance of the deposit was deposited into his personal account. With regard to the remaining American Express Travel deposits, the proceeds from the checks were deposited directly into Mr.

Muia's personal account. The bank cashed a check for Mr. Muia drawn by American Express Travel to Ramada Inn, dated September 6, 1985, in the amount of $3,485.52. This transaction was approved by the bank's branch manager, Ms. Laurel Bradshaw. (The total amount of Ramada Inn checks cashed by Mr. Muia or deposited into his personal account is $71,397.29.)

All of the American Express Travel checks were endorsed on behalf of Ramada Inn and some of the checks bore the additional endorsement of Mr. Muia or contained Mr. Muia's personal account number. The American Express Travel check that was dated September 6, 1985, and was cashed for Mr. Muia by the bank contained the following endorsement: "Ramada Inn Thomas Muia G.M."

Ms. Kay Ross, a teller employed by the bank, inquired of her "supervisor" regarding a Ramada Inn check deposited by Mr. Muia into his personal checking account. She was informed "[t]hat it was fine because of the fact that Thomas Muia did business for the Ramada Inn, and this was for the Ramada Inn." Ms. Ross accepted the deposit and several similar deposits thereafter. Other tellers who accepted deposits from Mr. Muia did not inquire of his authority to make such deposits as they relied on his position as general manager to perfect banking transactions on behalf of Ramada Inn.

The bank contends the trial court erred in failing to grant its motion for directed verdict with regard to the proceeds of the checks deposited directly to Mr. Muia's personal account. In support of this contention the bank relies on OCGA § 7-1-352 (a), which provides as follows: "Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary, whether bona fide or mala fide, *shall deposit any money in any bank to his credit as an individual*, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, *such bank shall be authorized to pay the amount of such deposit, or any part thereof*, upon the order of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, *without being accountable in any way to the principal*, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited." (Emphasis supplied.)

In *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229 (219 SE2d 162), "the Supreme Court stated: 'It is clear that the statute is designed to protect a bank from liability where an agent or fiduciary misappropriates funds of the owner in breach of his agency or trust without the bank's knowledge. The bank is not required to scrutinize every check written by a fiduciary or agent to see if the check is written in compliance with the agent's authority.' p. 230." *Flo-Control v. Northeast Bank*, 150 Ga. App. 880, 882 (258 SE2d

695). It appears this rule applies equally where an agent or fiduciary endorses a check and deposits the proceeds thereof to an account other than that of his principal. See *National Factor &c. Corp. v. State Bank of Cochran*, 224 Ga. 535, 536 (1) (163 SE2d 817). However, application of this rule is not unbridled.

"In *National NuGrape Co. v. Citizens & Southern Nat. Bk.*, 94 Ga. App. 5, 14 (93 SE2d 381), (certiorari denied), the Court of Appeals, after quoting Code § 13-2042 [formerly Ga. Code Ann. § 41A-1605 and now OCGA § 7-1-352], stated: 'To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order *to one other than the bank itself*, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the *sole inference* that a breach of trust is intended. Michie, Banks & Banking, Vol. 5A, p. 161; AmJur 376, § 522; *Bischoff v. Yorkville Bank*, 218 N.Y. 106 (112 NE 759, LRA 1916F, 1059). Judge Sibley speaking for the court in *Atlanta & St. A.B.R. Co. v. Barnes*, 95 F2d 273, stated as to such cases: "The penalty thus visited ought to be supported by the mala fides of a fraudulent intent, or by a negligence so great as to show wilful ignorance. Simple neglect to inquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper . . . Commercial transactions are not put within the strict fetters of constructive notice." ' " *National Factor &c. Corp. v. State Bank of Cochran*, 224 Ga. 535, 539, supra.

Under circumstances similar to those of the case sub judice, the Supreme Court in *National Factor* accepted the above quoted rule and held, "that the circumstances must be such as to raise a presumption of knowledge that the party is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the sole inference that a breach of trust is intended." *National Factor &c. Corp. v. State Bank of Cochran*, 224 Ga. 535, 539, supra. From this rule, it follows that plaintiff in the case sub judice carries a heavy burden of showing that the bank was aware of Mr. Muia's alleged misappropriation of funds. In this regard, Mr. Muia deposited 19 checks made payable to Ramada Inn directly into his personal account. In a "split deposit" transaction, Muia received a substantial amount of cash from the proceeds of a Ramada Inn check, which was made a part of that transaction; and, the bank cashed for Mr. Muia a check made payable to Ramada Inn for over $3,400. These facts raise the question of the scope of Mr. Muia's actual, apparent and implied authority as general manager to handle Ramada Inn's financial transactions.

"We do not hold that a general manager can never have the au-

thority or inherent agency power to arrange for the handling of corporate [or business] funds. See, e.g., *Fidelity & Deposit Co. v. Merchants Nat. Bank*, 223 Ia. 446 (273 NW 141) (1937 . . . . The scope of a general manager's power depends on his duties and responsibilities and his actual authority. See *Raleigh & G.R. Co. v. Pullman Co.*, 122 Ga. 700 (50 SE 1008) (1905), and *Knowles v. Rome Tribune Co.*, 127 Ga. 90 (56 SE 109)." *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229, 232, 233, supra.

In the case sub judice, in my view plaintiff's statement to the bank's branch manager that Mr. Muia was the "new general manager of the Ramada Inn . . . ," combined with plaintiff's authorization allowing Mr. Muia to endorse checks and deposit funds into Ramada Inn's regular checking account and withdraw funds from Ramada Inn's special checking account, was sufficient to support the bank's conclusion that Mr. Muia had wide authority to conduct Ramada Inn's financial transactions. This conclusion is further supported by evidence indicating that Mr. Muia had authority to bind plaintiff for services rendered and products supplied to Ramada Inn by vendors and service personnel. This view is in line with the weight of authority in other jurisdictions "to the effect that a bank is not charged with notice of misappropriation by an agent or fiduciary, because of the mere fact that the latter deposited to his individual account a check or note payable to or indorsed by him in his fiduciary capacity." 57 ALR 925, 930, § III. See also supplementing annotations in 64 ALR 1404, § III; 106 ALR 836, § III; and 115 ALR 648, § III.

Consequently, in the case sub judice, with the bank's specific denial that it had knowledge of the misappropriation by Muia of funds belonging to plaintiff, this court should conclude that the facts and circumstances relied upon by plaintiff to show knowledge by the bank of conversion of funds by Mr. Muia do not make an issue of fact for the jury. See *Citizens Bank of Forsyth v. Middlebrooks*, 209 Ga. 330 (72 SE2d 298); *Chelena v. Ga. Fed. &c. Assn.*, 256 Ga. 336 (349 SE2d 180); *Bank South v. Grand Lodge &c. for Ga.*, 174 Ga. App. 777 (331 SE2d 629); and *National Bank of Ga. v. Weiner*, 180 Ga. App. 61 (348 SE2d 492). The trial court erred in allowing this matter to go to the jury and in failing to grant the bank's motion for directed verdict as to its liability for the checks deposited into Mr. Muia's personal account.

The majority's reliance upon *National Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga. App. 240 (248 SE2d 496), and *Thornton & Co. v. Gwinnett Bank &c. Co.*, 151 Ga. App. 641 (260 SE2d 765), is misplaced. In those cases, the statutory defense, OCGA § 7-1-352 (a), was not relied upon. See *Flo-Control v. Northeast Bank*, 150 Ga. App. 880, 882, supra.

I, therefore, respectfully dissent. I am authorized to state that

Judge Carley and Judge Benham join in this dissent.

DECIDED DECEMBER 4, 1987 —
REHEARING DENIED DECEMBER 17, 1987 —

*Neal W. Dickert*, for appellant.
*James W. Purcell, Mark C. Wilby*, for appellee.