72151. KEMP et al. v. BELL-VIEW, INC.
(346 SE2d 923)

BEASLEY, Judge.

The parents of a minor child sued the manufacturer/seller of windows for property damage to their home (count one) and personal injury to their child (count two) after a window fell on the child's hand resulting in the amputation of two fingertips. Count one was dismissed as barred by the statute of limitation. A jury trial on the remaining count resulted in a verdict in favor of the defendant company. The Kemps appeal from the judgment entered on the verdict for defendant and from the denial of their motion for new trial, motion for judgment notwithstanding the verdict, and motion to enter judgment in favor of plaintiffs, to conform judgment to verdict or to set aside judgment.

1. Appellants first assert that the property damage claim was not time-barred because the statute of limitation was tolled by the company's alleged repeated promises to repair or replace the windows.

The windows manufactured by Bell-View were sold to the Kemps on June 2, 1976 and the injury to the child's hand occurred on September 28, 1981. Count one of the Kemps' suit alleged that the windows had been "negligently manufactured and sold, defective, unmerchantable, unreasonable hazardous and not reasonably fit for the purposes intended" and that as a proximate result the value of the Kemp home had been reduced damaging the Kemps in the amount of $25,000 and further entitling them to reimbursement of the purchase price of the windows and door, $957.40. This count also alleged: "Defendant has repeatedly, with the last promise being made on June 1, 1981, promised to repair or replace said windows and door, but has deliberately failed to do so even though plaintiffs have relied upon defendant's representation that it would so correct the problem. As a result thereof, plaintiffs have been defrauded and are further entitled to damages set forth above as compensation for said fraud."

An action for damage to realty must be brought within four years

after the right of action accrues. OCGA § 9-3-30. Whether count one is construed as a claim for breach of contract, breach of implied warranty, negligence, or strict liability, it is governed by a four-year limitation for filing suit. See OCGA § 11-2-725; *Smith v. Dixon Ford Tractor Co.*, 160 Ga. App. 885, 887-888 (288 SE2d 599) (1982) (breach of contract, warranty); *Millard Matthews Bldrs. v. Plant Improvement Co.*, 167 Ga. App. 855 (307 SE2d 739) (1983) (negligence); *Daniel v. American Optical Corp.*, 251 Ga. 166 (304 SE2d 383) (1983) (strict liability). Plaintiffs do not maintain otherwise. The windows were part of the initial construction of the home. Therefore, the cause of action would have accrued at the time of the allegedly defective construction. *Bicknell v. Richard M. Hearn Roofing &c.*, 171 Ga. App. 128 (318 SE2d 729) (1984); *Millard Matthews Bldrs. v. Plant Improvement Co.*, supra; *Atlanta Gas Light Co. v. City of Atlanta*, 160 Ga. App. 396 (287 SE2d 229) (1981).

The date of installation (construction) and sale of the windows was June 2, 1976; the action filed on September 16, 1983, was too late unless the statute of limitation was effectively tolled, or unless the circumstances here allow a finding of a different beginning point in time from which the statute would run.

Appellants cite *Teledyne Indus. v. Patron Aviation*, 161 Ga. App. 596 (288 SE2d 911) (1982) for the proposition that where there is an agreement to repair or replace, the warranty is not breached until there is a refusal or failure to repair, i.e., the applicable statute of limitation would begin to run at that time. *Teledyne* does not control the situation in count one of this case inasmuch as *Teledyne* involves a claim of breach of a warranty of repair, not a breach as to the windows themselves. The allegations regarding promises to repair are offered in justification of the tardy filing here, as actions of defendant constituting fraud which would toll the statute of limitation as to the causes of action relating to manufacture.

OCGA § 9-3-96 provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." This statutory provision must be strictly construed, inasmuch as it is an exception to the general statute of limitation rule. *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343, 344 (245 SE2d 297) (1978). The type of fraud required under OCGA § 9-3-96 to toll the statute of limitation "must be of that character which involves moral turpitude, that is, actual fraud rather than constructive fraud, in the absence of a confidential relationship, and in addition, such actual fraud must have the effect of debarring and deterring the plaintiff from his action. [Cits.]" *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 597 (2) (327 SE2d 736) (1985). "Fraud cannot consist of mere broken

promises, unfilled predictions or erroneous conjecture as to future events. [Cits.]" *Riddle v. Driebe*, 153 Ga. App. 276, 281 (265 SE2d 92) (1980).

There is no allegation of the type of fraud necessary to stop the clock from running as to plaintiffs' claim for property damage and thus to save count one from the dismissal.

2. Appellants maintain that the court erred in refusing to permit a witness to give an expert opinion as to whether the window was defectively designed or built. They argue that inasmuch as the witness testified that he had constructed several hundred houses and had installed a substantial quantity of windows as well and was in fact the dealer who had sold the subject windows to them, "[c]ertainly he was as much an expert on window design as the wrecker driver who testifies as to accident causation, the deputy sheriff who testifies as to ballistics or the common property owner who testifies as to value."

The witness himself disavowed any knowledge whatsoever about window design, the subject on which his opinion was sought. "[W]hether or not a witness is allowed to testify as an expert is a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed. [Cits.]" *Rose Mill Homes v. Michel*, 155 Ga. App. 808, 809 (1) (273 SE2d 211) (1980). There is no suggestion of such an abuse of discretion here. The court would not be required by law to assume expertise about window design or window construction from a familiarity with window installation.

3. It was wrong, appellants contend, for the court to charge the jury on the defense of "accident" because this was a products liability action. Such a charge in that context is harmful as a matter of law, they urge, relying on *Chadwick v. Miller*, 169 Ga. App. 338 (312 SE2d 835) (1983).

Appellants argument here fails for several reasons. First, the very charge on accident to which appellants now take exception tracked the written request to charge submitted by the Kemps themselves. "One cannot complain of the giving of a charge that was specifically requested by the complaining party." *Citizens & Southern Nat. Bank v. Morgan*, 142 Ga. App. 337, 340 (3) (235 SE2d 767) (1977).

Secondly, the gravamen of *Chadwick* is that "[t]he defense of accident in this state is to be confined to its strict sense as an occurrence which takes place in the *absence of negligence* and for which no one would be liable." *Chadwick v. Miller*, supra at 344 (1).

The Kemps had asserted a claim based on negligence as well as other theories and thus the charge was appropriate.

4. Lastly, appellants urge that the court "erred in failing to grant a [mistrial] and in failing to grant a new trial after the jury returned a verdict showing inconsistent findings," and further that the court "erred in this regard in making prejudicial remarks to the jury lead-

ing them to believe they should have returned a verdict in favor of the Defendant."

Initially, the jury returned a verdict for defendant with the following provisions: "The parties are equally negligent. Bell-View should print warning and adjustment procedures that should be followed when the type of window is installed. This brochure should accompany each window sold. Paper warning labels should be applied to every window before they leave the Bell-View plant. That all windows in the Kemp home should be adjusted by the Bell-View Corporation so that all of them operate properly."

After publication, the court informed the jury that its findings and directions beyond the verdict for the defendant was surplusage. At this point, plaintiffs' counsel asked to make a motion in regard to the verdict and outside the jury's presence. Counsel argued that the finding of equal negligence in a products liability context was totally inconsistent with the finding of no liability on the part of the defendant and that the jury's directions that there should be warning stickers constituted a finding of liability. Based on such arguments, the plaintiffs moved for a judgment in their favor. The parties had agreed on submitting a general verdict to the jury, and the court stated it would accept the verdict. At that point, plaintiffs moved for a mistrial on the ground that the jury returned a verdict inconsistent as a matter of law, or in the alternative they asked that the jury be instructed that if it found the window defective then there was liability on the part of the defendant, and "if there is no liability then they cannot find a defect." Defendant moved to strike the addendum from the verdict as being illegal and beyond the jury's province and asked the court to accept the verdict. The court accepted the verdict "for the time being," brought the jury back in, thanked the jurors for their service, and stated that it would be "inappropriate for me to comment on your particular verdict." Plaintiffs then requested that the jury be informed that a portion of their verdict had been stricken and the court so informed the jury. They further asked that "the jury be polled as to whether this verdict, as it has been accepted by the Court as part of it has been ruled out upon defendant's motion, is still their verdict." The jury was polled and one juror responded that the verdict was his if it included the specific findings. After a request by plaintiffs for another poll, the court brought the jury back and reinstructed them about the form. Subsequently, the jury returned an unadorned verdict in favor of the defendant.

Appellants argue that the findings in the context of the verdict show that the jury was confused and that the court should have recharged the jury and that the failure to recharge constituted reversible error. The scope of an enumeration of error cannot be enlarged merely by statements in the brief. *Echols v. State*, 149 Ga. App. 620

(3) (255 SE2d 92) (1979); *DeBoard v. Schulhofer*, 156 Ga. App. 158, 161 (2) (273 SE2d 907) (1980).

The Kemps further contend that the court erred in failing to grant a mistrial after the jury returned the initial verdict. " 'The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. [Cits.]' " *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 843 (2) (244 SE2d 905) (1978).

Did the trial court abuse its discretion in refusing to grant a mistrial after the first return of the verdict? We hold that it did not.

In the first place, even if we assume *arguendo* that appellants are correct in their analysis that the initial verdict was inconsistent so as to be illegal, the trial court did not act improperly in reinstructing the jury as to the form of its verdict and in directing further deliberations, for where "an inconsistent and void verdict is returned by the jury, it is proper for the trial judge to refuse to receive the verdict, and to require them to return for further deliberations, under proper instructions. [Cits.]" *Thompson v. Ingram*, 226 Ga. 668, 671 (2) (177 SE2d 61) (1970). See OCGA §§ 9-12-4; 9-12-8.

Moreover, prior to submission to the jury the Kemps agreed to the form of the general verdict, and did not request a special verdict (see OCGA § 9-11-49). Therefore, the court could have accepted the initial verdict by disregarding the specific and gratuitous findings as surplusage. See *Hales v. Sandersville Bldrs. &c. Co.*, 127 Ga. App. 558 (194 SE2d 281) (1972).

Furthermore, the jury's final verdict clearly and unequivocally revealed its intent to make a finding of non-liability on the part of defendant; this had not changed throughout the various revisions.

Finally, appellants assert that the court's instruction to the jury following the initial verdict and prior to the final one, constituted an impermissible "scolding" of the jury. While, of course, this court cannot discern from the record the tone or expression of the trial court in its instruction to the jury, we have examined the language of the court's statements and do not find any such alleged prejudicial remarks on the part of the trial court.

This enumeration of error provides no basis for relief from the jury's verdict and the judgment in favor of the defendant.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 1, 1986.

*Ronald W. Hallman, William J. Neville, Jr.*, for appellants.

*Joe W. Rowland,* for appellee.