77788. SERVICE LINES, INC. v. TRUST COMPANY BANK.
(377 SE2d 872)

DEEN, Presiding Judge.

From April 1982 through June 1983, appellant Service Lines f/k/a Trans-State, Inc. (Trans-State), had in its employ one Papanicolaou, a defendant below but not a party to the instant appeal. Papanicolaou was engaged to handle certain financial and accounting duties and, according to the record, was the designated registered agent for Trans-State at all times relevant to this appeal. He was also named a director of the corporation.

On May 15, 1982, Papanicolaou opened an account in Trans-State's name with appellee Trust Company Bank ("the bank"), completing an account information form on which he identified himself as Trans-State's secretary and treasurer. At the same time Papanicolaou submitted to the bank a Corporate Certificate of Authority, bearing the corporate seal and containing a corporate resolution which named him as secretary and treasurer of Trans-State and authorized him on the corporation's behalf to enter into any of the bank's checking, savings, or time deposit accounts and to sign checks, drafts, or other orders on the account(s). The corporate resolution also authorized the bank to accept for deposit checks or other instruments payable to the

order of Trans-State. Between May 1982 and April 1983, Papanico-laou deposited twenty-one checks (made payable to Trans-State, Inc., or a slight variant of the corporate name) to Trans-State's account, and in April 1983 withdrew all the monies deposited. At about the same time he deposited a check payable to Trans-State into an account which he had opened in the name of Papco Transportation, Inc.

Papanicolaou was subsequently removed from Trans-State's Board of Directors, and in May of 1987 Trans-State filed a conversion action against Papanicolaou and the bank. In May 1988, the trial court granted summary judgment to the bank on the twenty-one checks deposited in the Trans-State account but denied summary judgment as to the check deposited in the Papco Transportation account. Trans-State appeals from the summary judgment, enumerating as error the award of summary judgment, and alleging that the trial court erroneously relied on OCGA §§ 7-1-352 (a) and 14-2-4 and this court's ruling in *Flo-Control v. Northeast Bank*, 150 Ga. App. 880 (258 SE2d 695) (1979). *Held*:

OCGA § 14-2-4 (a) provides, in pertinent part: "With respect to any contract, conveyance, or other similar document executed by and on behalf of a corporation, . . . the presence of the corporate seal . . . attested by the secretary . . . of the corporation shall attest: (1) That the corporate seal, or facsimile thereof, affixed to the document is in fact the seal of the corporation . . . ; (2) That any officer of the corporation executing the document does in fact occupy the official position indicated, that one in such position is duly authorized to execute such document on behalf of the corporation, and that the signature of such officer subscribed thereto is genuine; and (3) That the execution of the document on behalf of the corporation has been duly authorized." Subsection (b) provides: "When the seal of a corporation or facsimile thereof, is affixed to any document and is attested by the secretary . . . of a corporation, a third party without knowledge, or reason to know, to the contrary may rely on such document as being what it purports to be."

OCGA § 7-1-352 (a) provides, in pertinent part: "Whenever any agent . . . or other fiduciary, whether bona fide or mala fide, shall deposit any money in any bank to his credit as an individual, or as such agent . . . or other fiduciary, . . . such bank shall be authorized to pay the amount of such deposit, or any part thereof, upon the order of such agent . . . or other fiduciary, . . . without being accountable in any way to the principal . . . or other person or corporation who may be entitled to or interested in the amount so deposited."

In a factual situation closely similar to that of the case at bar, this court in *Flo-Control*, supra, considered the intent and scope of the cited statutes and quoted a portion of the holding in *Trust Co. v. Nationwide Moving &c. Co.*, 235 Ga. 229 (219 SE2d 162) (1975), at

230: "It is clear that [OCGA § 7-1-352 (a)] is designed to protect a bank from liability where an agent or fiduciary misappropriates funds of the owner in breach of his agency or trust without the bank's knowledge. The bank is not required to scrutinize every check written by a fiduciary or agent to see if the check is written in compliance with the agent's authority." This court then went on to hold, at 882: "Similarly, we hold that a bank when presented a corporate resolution proper on its face together with a seal affixed as here is not required to make further inquiry behind it to determine whether it is genuine or a forgery. Once a resolution is received [which appears] regular on its face, the bank can rely on it and on this statutory defense when a breach of trust by an agent or fiduciary occurs."

In *Trust Co. Bank of Augusta v. Henderson*, 185 Ga. App. 367 (364 SE2d 289) (1988), aff'd 258 Ga. 703 (373 SE2d 738) (1988), the owner/operator of a motel introduced a certain motel employee to bank personnel as the motel's general manager. The latter individual was provided by the owner with an endorsement stamp which contained a restrictive endorsement, but he proceeded to cash checks and/or deposit them to his account by hand and in blank, rather than through use of the restrictive endorsement stamp. The jury found for the motel owner against the bank, and this court affirmed the judgment (except for the award of attorney fees), as did the Supreme Court.

In its affirmance the Supreme Court held that "the bank is not shielded by OCGA § 7-1-352 [supra] but is subject to the provisions of OCGA § 11-3-419," which Code section (Subsection (1) (c)) describes an instrument as "converted" when paid on a forged endorsement, but in Subsection 3 "absolves a party from liability to the true owner in conversion . . . when the party has dealt with an instrument or its proceeds in good faith in accordance with reasonable commercial standards." The court reasoned that since "there was no evidence that the party to whom the checks were payable [had] authorized [the manager] to negotiate the checks . . . [otherwise than] through the use of a restrictive endorsement stamp . . . [, e]vidence of . . . facts regarding the restrictive endorsement authorized the jury to find that the bank was put on inquiry as to the propriety of the endorsements," and therefore had not acted in accordance with reasonable commercial standards. Specifically, the Supreme Court in *Henderson* cautioned: "We read [OCGA § 7-1-352] to mean that the bank incurs no liability for the uses to which trust funds are applied after they are withdrawn. On the other hand, the statute contains no language protecting the bank against liability for honoring forged or otherwise improper checks or endorsements." Id.

In *Henderson*, unlike the case *sub judice*, the manager presented no document bearing the corporate seal and purporting to authorize

him to engage in any transaction outside the scope of the restrictive endorsement stamp, whereas in the instant case Papanicolaou had no restrictive endorsement stamp and presented documents which, under OCGA § 14-2-4 (a) and (b), supra, appeared to give him very broad authorization. Because of these significant factual distinctions, the Supreme Court's holding that the bank in *Henderson* was not protected by OCGA § 7-1-352 would not be applicable in the instant case; to the contrary, the result here would be dictated by *Trust Co. v. Nationwide Moving &c. Co.*, supra, and *Flo-Control*, supra. We therefore find no merit in appellant's enumeration of error.

*Judgment affirmed. Carley, C. J., concurs. Sognier, J., concurs specially.*

SOGNIER, Judge, concurring specially.

I agree with the majority's reasoning and result. I write specially to point out that in my view the language from *Flo-Control v. Northeast Bank*, 150 Ga. App. 880 (258 SE2d 695) (1979) employed by the majority to explain OCGA § 7-1-352 is overbroad. My concern is that it is capable of being, and has been, in the past, misapplied. I find that the language used by the Supreme Court in *Trust Co. Bank of Augusta v. Henderson*, 258 Ga. 703 (373 SE2d 738) (1988), reading OCGA § 7-1-352 to mean that the bank incurs no liability for the uses to which trust funds are applied after they are withdrawn and not as protecting the bank against liability for honoring forged or otherwise improper checks or endorsements, is more precise and better states the scope and purpose of the statute.

DECIDED JANUARY 3, 1989 —
REHEARING DENIED JANUARY 23, 1989 —

*Charles C. Pritchard*, for appellant.
*King & Spalding, Ross O. Silverman, James E. Thompson, Ralph A. Pitts, Gary J. Toman*, for appellee.