A90A0770. LaBANZ v. BANK SOUTH, MACON et al.
(400 SE2d 357)

BEASLEY, Judge.

Plaintiff Joseph LaBanz appeals from the verdict in his favor in his suit against his mother, Barbara LaBanz, and Bank South, Macon. He alleged that the bank and his mother were jointly liable for the loss of $200,000 in insurance proceeds. The jury awarded $131,011.88 (including interest) against Mrs. LaBanz, who filed no answer to the complaint but argued on damages, and $31,079.60 against the bank. He enumerates as error: failure to rule that the verdict was insufficient as to the bank; failure to give certain requested charges on three subjects; allowing concluding argument by two attorneys for the bank. This third enumeration will not be considered because the record does not show it was raised below.

Viewed in favor of the verdict, the facts were that Joseph's parents, Maryland residents, divorced in 1978. Mr. LaBanz was murdered in 1979 when Joseph was 13. His will left everything to his ex-

wife if she survived him for 30 days. In addition to the estate passing by will, there were two life insurance policies with Joseph as beneficiary. Mrs. LaBanz petitioned the Maryland court and was appointed guardian of Joseph's property. The first payout of $100,000 was made to her by the insurance company's check dated January 29, 1980, payable to her "as guardian of the property of Joseph Duvall LaBanz, a minor."

On February 7, Mrs. LaBanz flew to Macon and was met by her sister, Ms. Angelo (later Mrs. Smith). Angelo, a real estate agent as was LaBanz, had numerous dealings with the bank and had dealt extensively with McGehee, a loan officer. Prior to LaBanz' coming to Macon, Angelo had shown McGehee a newspaper clipping regarding the murder and told him her sister was coming to invest a large sum of money and that it might have come from the death. Angelo and LaBanz had jointly purchased property in Florida the year before for investment purposes and had opened a joint checking account at the bank for use in future investments.

On February 8, 1980, Angelo introduced McGehee and LaBanz. She was not privy to any discussions between them thereafter. LaBanz endorsed the insurance check exactly as it was made out. Of the $100,000, $60,000 went into a savings account opened that day in her name. The remaining $40,000 went into the Angelo/LaBanz checking account. Loan officers did not handle making deposits or opening accounts. That was done by secretarial and other bank personnel.

McGehee did make a loan to LaBanz of $35,400. Of that loan, $5,400 was disbursed to repay Angelo for covering LaBanz' bad checks. The remaining $30,000 went into the Angelo/LaBanz checking account to be used in closing on the Smith farm purchased jointly in their two names.[1] LaBanz assigned the $60,000 savings account to the bank that day as collateral for the loan. Of that initial $60,000 in the savings account, LaBanz withdrew $24,000 and deposited it into her personal checking account.

The $35,400 loan note was never paid and the bank seized the pledged savings account in February 1983. Neither Mrs. LaBanz' personal account nor the Angelo/LaBanz account was pledged to the bank and no funds were seized by the bank from these accounts.

So much for the first insurance proceeds.

On February 26, 1980, LaBanz negotiated the second $100,000 check, with the same payee language, and purchased a certificate of deposit in only her name. Again, she endorsed the check as made out.

That certificate was pledged to the bank on March 3, 1980, to

---

[1] Angelo thereafter married Smith.

secure a $35,000 note to LaBanz, which was used by Angelo to finance some property. The certificate was released from pledge the next week when the note was paid off.

From March 27, 1980, until November 3, 1980, LaBanz borrowed another $99,500 from the bank, which was combined in a note for that amount on October 23, 1980. The certificate of deposit secured the note. The proceeds from the certificate were used by LaBanz on January 25, 1982, to pay the note's principal and some interest. She signed another note that day for $54,721.84, representing the balance of the interest plus several 1981 loans.

The proceeds of these loans were largely used by Angelo and LaBanz to invest in real estate, including the Smith farm and the residence in which LaBanz and Joseph lived after moving to Macon in 1981. The $54,721.84 note was secured by the residence property; the bank later foreclosed on the note and sold the property. Most of the other investment property was eventually foreclosed upon by either Bank South or other banks.

LaBanz had been required to file a $100,000 bond in Maryland for the guardianship, but she failed to comply with a court order to increase the bond to cover the second payment of $100,000. She filed two accountings with that court, in 1981 and 1983.

In April or May of 1981, LaBanz hired an attorney and signed a trust instrument conveying all the real property and other assets to herself as trustee for Joseph. This was the first time Angelo and McGehee were aware of Joseph's interests. Joseph reached majority in 1984.

1. We first consider the ground raised in the motion for new trial that the verdict "is inconsistent and unsupported by the evidence since the facts established that the Bank's liability would have been incurred as of the negotiation of the checks in question, and if there was any misappropriation on the part of the Bank, it would have been equal to the misappropriation of . . . LaBanz," i.e., joint liability for conversion.

The bank contended throughout the trial that its liability and that of LaBanz were entirely separate issues and that its liability, if any, had to be predicated upon its participation, other than merely by negotiating the checks, either in the conversion or in allowance of LaBanz' use of the funds after notice to the bank of Joseph's interest. The court so charged the jury without objection.

At the close of the case, Joseph moved for directed verdict on the ground that the endorsements were restrictive endorsements under the UCC and that the bank failed to apply the proceeds in accordance with the endorsement. That motion, however, referred only to the first $100,000. No motion was made as to the second. The denial of that motion for directed verdict was not appealed. The verdict form

reflected separate verdicts for each defendant. It was not objected to by Joseph either when submitted to the jury or returned.

"[W]here 'an inconsistent and void verdict is returned by the jury, it is proper for the trial judge to refuse to receive the verdict, and to require them to return for further deliberations, under proper instructions. (Cits.).' *Thompson v. Ingram*, 226 Ga. 668, 671 (2) (177 SE2d 61) (1970). See OCGA §§ 9-12-4; 9-12-8." *Kemp v. Bell-View*, 179 Ga. App. 577, 581 (4) (346 SE2d 923) (1986). However, "[u]pon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to object. *Todhunter v. Price*, 248 Ga. 411 (1) (283 SE2d 864) (1981)." *Clifton v. Clifton*, 249 Ga. 831, 832 (294 SE2d 518) (1982).

Any objection to the allegedly inconsistent verdict was waived by appellant's failure to raise it in the trial court when it could have been remedied then and there with the same jury if deemed erroneous. Denial of the motion for new trial on this ground was not error.

2. Enumerations 2, 3, and 4 cite failures to give numerous instructions requested by plaintiff and will be addressed together.

At the conclusion of the charge, the court inquired as to objections. Appellant Joseph responded to the failure to give the above-referenced charges simply by reciting the number.

(a) Enumeration 2. Appellant's argument on the issue of attorney fees and damages, requests 16 and 17, hinges upon the contention that the conversion by the bank occurred at the time of presentation of the two checks. The jury's verdict reflects its conclusion that the bank officers were not aware that, when the checks were originally negotiated, they were subject to the guardianship or were being misapplied. In this context, there was no basis for the imposition of attorney fees or punitive damages. *Trust Co. Bank v. Henderson*, 185 Ga. App. 367, 372 (4) (364 SE2d 289) (1987), aff'd 258 Ga. 703 (373 SE2d 738) (1988).

(b) Enumeration 3. Requests 4, 7, 10, 13, and 18 deal with duties of a guardian toward a ward and not with the bank's duties. The liability of guardian LaBanz for the conversion of the ward's funds was not in dispute since she had not answered. Violation of her duty was established. The only liability issue left was whether the bank knew of the guardianship and thereafter allowed dissipation of the funds. A charge on the guardian's duties was given, in any event. There was no error.

(c) Enumeration 4. Requests 20, 21, and 23 deal with provisions of the UCC on restrictive endorsements. Enumeration 4 states that the giving of these charges "applicable to the negotiation of the checks . . . would have required the Court to grant Appellant's Motion for Directed Verdict as to the liability of the Appellee Bank and would have made the damages between the bank and Appellee . . .

LaBanz identical." The court denied the motion, which as stated earlier is not enumerated as error.

The court, in denying that motion for directed verdict, evidently rejected Joseph's contention that the endorsement was restrictive as defined in OCGA §§ 11-3-205 and 11-3-206, concluding instead that the endorsements were in blank, as covered by OCGA § 11-3-204 (2). The designation of the payee as a fiduciary is not a restrictive endorsement. See also OCGA § 11-3-117 (b).

Failure to give the inapplicable principles was not error. As to the bank's duties, see *Bank South v. Grand Lodge &c.*, 174 Ga. App. 777 (331 SE2d 629) (1985); *Service Lines v. Trust Co. Bank*, 189 Ga. App. 891 (377 SE2d 872) (1989).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 29, 1990 —
REHEARING DENIED DECEMBER 13, 1990 —

*Talbot & Ladson, Thomas W. Talbot, Deborah A. Edwards,* for appellant.

*Martin, Snow, Grant & Napier, George C. Grant, John T. McGoldrick, Jr.,* for appellees.

Barbara A. LaBanz, *pro se.*