A93A2131. MORRIS v. THE STATE.
(441 SE2d 273)

SMITH, Judge.

Roosevelt Morris was indicted by a Cobb County grand jury on charges of rape, OCGA § 16-6-1, burglary, OCGA § 16-7-1, and aggravated assault, OCGA § 16-5-21. He was convicted on all three counts. His motion for new trial was denied, and he appeals. Both enumerations of error concern the introduction of DNA evidence. See generally *Caldwell v. State,* 260 Ga. 278 (393 SE2d 436) (1990).

1. Morris first enumerates as error the alleged failure of the trial court to address the threshold issue of admissibility of DNA test results. Morris acknowledged at trial that DNA testing "is based on sound principles" and that he had "no quarrel" with the qualifications of the State's expert. While Morris cross-examined the State's expert extensively and repeatedly regarding the State Crime Lab's DNA testing procedures, he did not present any expert testimony re-

futing or challenging the methodology of the tests. His sole objection at trial with respect to the methodology of the State's DNA testing was to the failure of the GBI lab to perform a "band shift test." Relying on language in *Caldwell*, supra at 288, Morris contends that a "band shift test" must be performed on every DNA analysis. This contention is without merit.

As more fully discussed in *Caldwell*, DNA testing relies upon the variation in genetic cell codes among individuals. The testing process breaks the genetic components of human cells into small units or fragments, which are then arranged in an orderly fashion on a nylon membrane. Radioactive "probes" are used to mark fragments of DNA known to be highly variable or "polymorphic," and the membrane is exposed on X-ray film. This produces an image known as an "autoradiograph," showing "bands" or darker stripes created by the radioactively marked DNA. When two autoradiographs created from separate samples are compared, bands of similar length and position on the autoradiographs (a "match") indicate that the samples have a common source. See *Caldwell* at 279-285.

As noted both in *Caldwell* and by the State's expert, "band shift" is a phenomenon which may occur during DNA testing. While the causes of "band shift" are imperfectly understood, when it occurs it produces non-alignment on the autoradiographs of bands that are actually similar. A "match" may nevertheless be declared if the bands are in essentially the same place within a permissible degree of error. *Caldwell* at 286.

In *Caldwell*, non-alignment of several bands was attributed to band shift, and accordingly a test was performed to confirm the presence of band shift and declare a match. *Caldwell* at 287-288. Here, in contrast, the State's expert testified that no band shift occurred on any of the five probes used in the tests performed on the DNA samples taken from Morris and the victim. Since the anomaly noted in *Caldwell* did not exist in this case, performing a test to confirm the presence of nonexistent band shift obviously would have been futile. Moreover, the visual matches obtained in this case were confirmed by use of a computer program which analyzed the autoradiograph bands to an error factor of plus or minus four percent. Morris did not object to this testimony. Under the testimony in this case, the computer analysis therefore fulfills the requirement of a "scientifically acceptable test" for confirming a visual observation under *Caldwell*.

2. In his second enumeration, Morris contends the trial court erred in allowing the State's expert witness to testify concerning the statistical frequency with which a particular marked fragment of DNA might occur. Morris first acknowledged at trial that the witness was qualified, and he did not object to the State's tender of the witness as an expert in the area of DNA analysis. Later, he did object to

the witness's testimony on population genetics, contending he was not qualified in that area. After further qualification of the witness, however, Morris did not renew his objection. He cross-examined the witness extensively on the source of the population samples but did not object to any portion of his testimony other than the band shift test. He has failed to preserve this enumeration of error for appeal. *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395) (1990).

3. Moreover, the DNA testing was by no means the only evidence of Morris's guilt. Viewed in the light most favorable to the verdict, the evidence showed that the victim, an 87-year-old woman, was raped at knifepoint in her home. She called her daughter after the rape occurred and identified Morris by his nickname and his mother's name as the rapist. The victim had known Morris for "a long time," as long as 20 years. The victim identified Morris again in the presence of the police, and she identified him again in court as the man who had raped her. A witness came forward who had seen Morris with a knife on the evening of the rape and then later saw him doing something beside a garbage can near a neighboring apartment. The police searched the garbage can and found two kitchen knives. The victim identified the knives found in the garbage can as the knives used in the attack. Another witness who saw a knife in Morris's possession earlier on the evening of the rape also identified one of the knives. Even excluding the DNA tests, the evidence was overwhelming as to Morris's guilt.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 11, 1994.

*Roderick H. Martin*, for appellant.
*Thomas J. Charron, District Attorney, Charles M. Norman, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.