A94A2219. FIRST UNION NATIONAL BANK v. BOYKIN et al.
(455 SE2d 406)

McMURRAY, Presiding Judge.

Superior Yarn Dyeing, Inc. ("Superior Yarn" or "the company") entered into a loan agreement with First Union National Bank ("First Union") in November 1988 with a principal amount of $400,000, plus a $250,000 line of credit. This loan was secured via the company's assets and separate guaranty agreements executed by the president of Superior Yarn, John Boykin, and Michael L. Percy, a major stockholder of the company. The guaranty Boykin executed provides for unlimited personal liability and the guaranty Percy executed provides for personal liability up to $100,000, "plus all interest or Finance

charges, Costs of Court, penalty interest, late payment charges and the reasonable attorneys' fees of [First Union]." Superior Yarn subsequently defaulted on the loan and First Union liquidated the assets of the company. Claiming a deficiency, First Union brought an action against defendants Boykin and Percy under their guaranty agreements for $92,729.61 in unpaid principal, attorney fees and interest.

At a jury trial, the issue of the amount and propriety of the alleged deficiency remaining under the loan agreement was disputed and the jury was properly charged in this regard. Also in dispute was whether First Union discharged defendant Percy as a co-surety (apparently with defendant Boykin's consent) and whether First Union waived material terms of the loan agreement, thereby discharging the guarantors via novation. See OCGA § 10-7-21. In this regard, defendant Percy testified that he and defendant Boykin met with a representative of First Union in November 1990 to discuss Superior Yarn's violation of certain loan covenants (apparently) relating to the company's insolvency and that First Union then insisted upon infusion of additional capital into the company in order to prevent declaration of a default under the loan agreement. Defendant Percy testified that he responded to First Union's demand by supplying Superior Yarn with $50,000 in cash and by taking steps to convert $80,000 the company owed him into corporate stock. Defendant Percy explained that he provided this capital in exchange for First Union's waiver of default under the loan agreement and promise to "satisfy any obligations [he] had to the bank. . . ." First Union countered by introducing evidence of a follow-up letter posted to defendant Percy wherein he affirmed (via execution and return of the letter to First Union) that consideration for the capital-infusion transaction did not include First Union's promise to discharge obligations related to the limited guaranty he executed. This letter pertinently provides as follows: "Your purpose and reasoning for offering this financial support to Superior [Yarn is] to assist the company by providing needed working capital, obtain a waiver of certain loan covenant violations, and if no other shareholder should elect to acquire like amounts of the company's stock, a greater position of ownership in Superior Yarn Dyeing, Inc."

Upon the conclusion of evidence, the parties did not request nor did the trial court charge the jury as to any aspect of defendants' liability as co-guarantors. The only instructions relating to defendants' liability under the guaranty agreements (other than the amount and propriety of the alleged deficiency under the loan agreement) were as follows: "Any change in the nature or terms of a contract is called a novation, and such novation, without the consent of the surety, discharges him. . . . While a stipulation of a contract may be waived by the conduct of the parties, the intent of the parties must be mutual. . . . I charge you that the Defendant carries the burden to

establish the existence of his affirmative defense [of] accord and satis-faction. . . . And I charge you that an accord and satisfaction must be of some advantage, legal or equitable, to the creditor, or it shall not have the effect of barring him from his legal rights under the original agreement." The trial court then provided the jury a special verdict form with spaces (if found to be applicable) for entry of separate verdicts against defendant Boykin and defendant Percy. Neither First Union nor defendants objected. First Union's only complaints to the trial court's charge were expressed via a general objection (without supporting argument) to the trial court's charge on the law of novation and an objection that the trial court failed to give the following written request to charge: "To be effective, a notice of revocation of a guaranty agreement must be in strict and full compliance with provisions of the guaranty contract calling for notice, must be clearly expressed, unqualified, positive, and absolute."

The jury returned a special verdict against defendant Boykin for $84,750 and defendant Percy for $28,250. When the trial court solicited objections to the verdict, First Union agreed that the form of the verdict was proper. The jury was then allowed to disperse. This appeal followed entry of judgment on the jury's verdict and denial of First Union's motion to amend the verdict or, alternatively, for a new trial. *Held*:

1. First Union contends the trial court erred in failing to amend the jury's verdict to reflect defendants' liability as guarantors of the same principal and the same debt, reasoning that the verdict should be molded to accomplish judgment against defendants, jointly and severally, for the aggregate sum of the jury's award, i.e., $113,000. Alternatively, First Union contends the trial court should have granted a new trial because the verdict illegally apportioned damages among joint and several obligors.

The undisputed evidence reveals that defendants Percy and Boykin contemporaneously executed guaranty agreements in favor of a common principal (Superior Yarn) to insure performance of the same duty or obligation, thus binding them (as a matter of law) jointly and severally to the limit of defendant Percy's personal liability of $100,000, "plus all interest or Finance charges, Costs of Court, penalty interest, late payment charges and the reasonable attorneys' fees of [First Union]." See *Snow v. Brown*, 100 Ga. 117, 120 (28 SE 77); 72 CJS, Principal & Surety, § 277 (c). See OCGA § 10-7-50. However, the jury was never directed to embrace the issue of defendants' joint and several liability and, as a consequence, entered varying awards against defendants Boykin and Percy which appear to be inconsistent as a matter of law and as a matter of fact. Unfortunately, there is no indication in the jury's verdict that the aggregate amount of the differing awards equal the sum of defendants' joint and several

obligation. Consequently, since the jury dispersed before clarifying this substantive issue, the trial court lost authority to correct or otherwise amend the seemingly inconsistent verdict. See *MARTA v. Tuck*, 163 Ga. App. 132, 137 (2) (292 SE2d 878). This, however, does not mean that the judgment entered on the verdict must be set aside and a new trial ordered as to defendants' liability. A similar situation arose in *LaBanz v. Bank South, Macon*, 198 Ga. App. 79, 81 (1), 82 (400 SE2d 357), where there was no challenge to a seemingly illegal apportioned verdict before dismissal of the jury. This court held as follows:

" '(W)here "an inconsistent and void verdict is returned by the jury, it is proper for the trial judge to refuse to receive the verdict, and to require them to return for further deliberations, under proper instructions. (Cits.)" *Thompson v. Ingram*, 226 Ga. 668, 671 (2) (177 SE2d 61) (1970). See OCGA §§ 9-12-4; 9-12-8.' *Kemp v. Bell-View*, 179 Ga. App. 577, 581 (4) (346 SE2d 923) (1986). However, '(u)pon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to object. *Todhunter v. Price*, 248 Ga. 411 (1) (283 SE2d 864) (1981).' *Clifton v. Clifton*, 249 Ga. 831, 832 (294 SE2d 518) (1982)." *LaBanz v. Bank South, Macon*, 198 Ga. App. 79, 81 (1), 82, supra. The same result was reached in *Ray v. Stinson*, 254 Ga. 375 (329 SE2d 502), where the parties failed to object to or otherwise seek to cure a special verdict (before dismissal of the jury) which was purportedly in excess of the amount of damages proved at trial. Id. at 375. Similarly, in the case sub judice, First Union not only failed to object to the seemingly inconsistent verdict before the jury was dismissed, it agreed that the special verdict consisting of separate awards to defendants was correct as to form. Further, First Union neither requested an instruction as to defendants' joint and several liability as co-guarantors up to the limit of defendant Percy's limited liability, nor did it object when the trial court instructed the jury to return (if applicable) separate awards as to defendants Boykin and Percy. These omissions along with First Union's failure to move for the directed verdict as to defendants' liability as joint and several obligors amounted to a waiver as to the form of the seemingly inconsistent verdict. See *Ray v. Stinson*, 254 Ga. 375, supra; *LaBanz v. Bank South, Macon*, 198 Ga. App. 79, 81 (1), supra. Consequently, the trial court did not err in denying First Union's motion to amend the verdict or, alternatively, for a new trial.

2. In its second enumeration of error, First Union contends the trial court erred in allowing defendants "to present evidence that [First Union] waived or did not enforce certain loan covenants against the principal debtor, Superior Yarn Dyeing, Inc." To the same extent, First Union contends in its third enumeration that the trial court erred in giving a charge on the law of novation, citing *Dunlap v. Citi-*

*zens &c. DeKalb Bank*, 134 Ga. App. 893, 895 (4) (216 SE2d 651), in support of an argument that defendants consented in advance in the guaranty agreements to alleged waivers which otherwise would have discharged their obligations as guarantors. With similar reasoning, First Union contends in its final enumeration that the trial court erred in refusing to give its written request to charge that, "[t]o be effective, a notice of revocation of a guaranty agreement must be in strict and full compliance with the provisions of guaranty contract calling for notice, must be clearly expressed, unqualified, positive, and absolute."

These enumerations provide no basis for reversal. The jury's verdict in favor of First Union indicates rejection of claims that defendants are discharged under their guaranty agreements via waiver of any term under the principal's loan agreement which materially altered defendants' liability under the guaranty agreements. See OCGA § 10-7-21; *Dunlap v. Citizens &c. DeKalb Bank*, 134 Ga. App. 893, 895 (3), supra.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 17, 1995 —

*Minor, Bell & Neal, Rickie L. Brown, Robert G. McCurry*, for appellant.

*Avrett, Ponder & Withrock, John T. Avrett, Mitchell & Mitchell, James H. Bisson III, William J. Kimsey*, for appellees.