A96A1753. FORD MOTOR COMPANY v. TIPPINS et al.
(483 SE2d 121)

SMITH, Judge.

Phillip Morris Tippins and his wife were killed in a collision between their car and a van.[1] Tippins's sons, as joint administrators of his estate, brought this product liability action against Ford Motor Company, alleging that the failure of Tippins's airbag to deploy contributed to his death. At trial, the jury returned a verdict in favor of the plaintiffs in the amount of $190,000. Judgment was entered in the amount of $380,000 by the trial court. Ford appeals, asserting that the trial court should have excluded certain testimony, should have directed a verdict in its favor, and should not have entered a judgment for twice the amount of the jury's verdict. We agree with Ford's last contention and reverse.

Construed in favor of the verdict, the evidence showed that, as Tippins was driving his Ford Taurus lawfully on a state highway, a full-sized Ford Club Wagon van driven by a man under the influence of drugs crossed the centerline and hit his car head-on. The witnesses agreed that the combined collision speed of the vehicles was between

---

[1] No claim was made in this action on behalf of Tippins's wife.

60 and 70 mph.

There was no dispute that the collision was "very severe" and "a very bad wreck." Not only did the vehicles meet at high speed and head-on, the larger and heavier van also rode up over the front end of Tippins's car, doing substantial damage to the passenger compartment. The testimony of the witnesses and the photographs taken at the scene establish that there was catastrophic structural damage to Tippins's vehicle. Emergency medical personnel cut away portions of the car with the "jaws of life," folded back the roof, and pulled the remains of the dashboard away from the front seat with a winch attached to a four-wheel-drive truck. There was no dispute that the steering column was sheared off at the dashboard by the force of the collision, completely severing the steering wheel containing the driver's side airbag. The steering wheel was found "up under" Tippins's upper body. Plaintiffs elicited testimony that the front end of the van actually entered the passenger compartment, striking Tippins in the head. Plaintiffs contended, however, that a properly functioning airbag would have prevented the van's bumper from striking Tippins and killing him.

1. In its first enumeration of error, Ford complains that the trial court erred in allowing a witness for the plaintiffs, James King, to testify that the decedent could have survived the accident if the driver's side airbag had deployed. Ford contends that King was not qualified to testify as an expert in the area of biomechanics and collision survivability and that he had an insufficient factual foundation upon which to base his opinion.

It is apparent from the record that King, a retired car dealer, auto mechanic, and body shop owner, had no training or experience in any of the medical or technical aspects of biomechanics and collision survivability. It is also apparent from the testimony and evidence that the condition of the vehicle was materially altered before King examined and photographed it, both by emergency medical personnel in their rescue efforts and by others in transporting or storing the car. Evidence was also introduced suggesting that King altered the condition of the car before the photographs were taken. But because Ford's counsel failed to preserve Ford's objections for appellate review, we do not reach either of these issues.

Ford's counsel initially objected to King's lack of qualification as well as to the lack of foundation for his opinion. Plaintiffs' counsel stated, "I expect to lay that foundation," to which the trial court responded, "Okay." Plaintiffs' counsel asked some additional questions, then asked again if Tippins would have survived if the airbag had deployed; King responded simply, "Oh yeah," and "No doubt." Ford's counsel did not object again, although King was cross-examined at length on the basis for his testimony.

Because of this failure to renew its objection or object to any portion of the witness's testimony, Ford has failed to preserve this enumeration of error for appeal. *Morris v. State*, 212 Ga. App. 42, 44 (2) (441 SE2d 273) (1994). Ford also failed to move to strike King's testimony after cross-examination. That method of preserving an issue for appellate review, however, has been disapproved by the Supreme Court of Georgia except in strictly limited circumstances. *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 268 (476 SE2d 722) (1996).

"[T]his court has often noted that even an otherwise valid objection is waived unless timely made at trial. [Cit.] Objections presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court. [Cit.]" *Butler v. State*, 172 Ga. App. 405, 406-407 (1) (323 SE2d 628) (1984). Under these circumstances, we cannot address the issue of the qualification of plaintiffs' witness James King or the foundation for his testimony.

2. In a related enumeration of error, Ford contends the trial court erred in failing to direct a verdict in its favor because of the absence of evidence that the collision was survivable. Despite plaintiffs' contentions to the contrary, the testimony of James King is the only evidence that the collision was survivable. Since Ford did not object, however, King's testimony constitutes some evidence of survivability and fulfills the "any evidence" rule applicable to motions for j.n.o.v. and directed verdict. *Outdoor Systems v. Woodson*, 221 Ga. App. 901, 902 (1) (473 SE2d 204) (1996). Ford's argument that this Court has the authority to reverse a verdict as against the weight of the evidence is without merit: such a reversal is a discretionary decision resting solely with the trial court. OCGA § 5-5-21; *Antique Center of Roswell v. City of Roswell*, 196 Ga. App. 894 (3) (397 SE2d 146) (1990); *McBowman v. Merry*, 104 Ga. App. 454, 455-456 (1) (122 SE2d 136) (1961).

3. In its third enumeration of error, Ford argues that plaintiffs failed to show that its product was defective. Once again, King's testimony is the only evidence concerning a defect in the airbag system. King was never offered or qualified as an expert witness with respect to airbag design, and he offered little if any foundation for his opinion that the airbag electronics should have been located in the rear of the vehicle to avoid damage. He simply stated that, "you've got some bad engineers," "the whole [airbag] system is wrong," and "you're 20 years behind time." He also testified that he did not agree with the government standards or statistics on airbags and added that if Ford's engineers had come to his house he could have told them how to build the airbag system. Once again, Ford failed to object either to

King's lack of qualification as an expert or to the lack of factual foundation for his opinions, and under the "any evidence" rule, this unobjected-to testimony suffices to present the case to a jury.

4. Ford also contends that the trial court should have granted its motion for a directed verdict because plaintiffs presented no evidence that the "enhanced injury" attributable to Ford's product caused Tippins's death. There was no direct evidence as to any injuries to Tippins other than the head injury, because the family refused an autopsy. The EMT who attended Tippins on the scene recorded "massive head and chest trauma" and "probable" multiple extremity fractures, but acknowledged that he could not state positively the extent of Tippins's other injuries. The embalmer testified that the decedent "was, like his wife, messed up so bad, I don't know if I can say one thing that caused his death or not." Witnesses engaged in much speculation regarding the presence or absence of signs of other injuries and their inferences from their observations, but no direct evidence of other injuries was presented. Plaintiffs contended that the absence of testimony regarding the presence of other injuries showed that the head injury was the sole cause of Tippins's death, that the deployment of the driver's side airbag would have prevented the head injury, and that Tippins therefore would have survived.

Ford complains that plaintiffs never proved the extent of "enhanced injury" to Tippins caused by the failure of the airbag, citing *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) (1992). Ford's reading of *Polston*, however, is not a correct statement of the law. *Polston* holds that once the plaintiff has proved the existence of an injury-enhancing defect, the burden falls on the *defendant* to prove the degree of injury attributable to other causes. Id. at 618-619. The burden fell upon Ford, not plaintiffs, to show the extent of injury *not* caused by the failure of the airbag.

This, as the dissent in *Polston* observes, requires the defendant to prove an essential element of the plaintiff's case. Id. at 622 (Hunt, J., dissenting). We note, too, that in wrongful death actions such proof is unavailable to the defendant. In the case of a non-fatal injury, as in *Polston*, the defendant can require the plaintiff to submit to an independent medical examination, OCGA § 9-11-26 (a), but no analogous discovery is possible in a death case. Because Tippins's family forbade an autopsy, it was impossible for Ford to obtain any medical evidence regarding the degree of injury attributable to other causes. But because we are bound by the clear rule established by the Supreme Court, we hold that the trial court did not err in denying Ford's motion for directed verdict on this ground.

5. In its two remaining enumerations of error, Ford complains that the trial court acted improperly when it entered judgment for double the amount of the jury's verdict. We agree.

Before retiring to deliberate, the jury received a verdict form that was not objected to by any party, although the record does not show by whom it was drafted or submitted. The jury returned a verdict in the amount of $380,000 in favor of Tippins's estate and $0 in favor of the plaintiffs, individually. After inspecting the verdict, the court, plaintiffs' counsel, and defendant's counsel agreed that the verdict was improper. Plaintiffs' counsel suggested that the jury could correct the verdict in the jury box, and the trial court questioned the jurors, asking if they meant to return a verdict for the full value of the decedent's life. After two jurors responded that they did, the trial court chose not to correct the verdict with the jury in the box. Instead, the court told the jurors to retire to the jury room with another verdict form to prepare a verdict "whatever your intention was." This second verdict form submitted to the jury was identical to the first and was approved by both counsel.

Ford's counsel objected to the colloquy with the jurors, contending that the trial court had asked the jurors about their verdict and thus had interfered in the jury process. Plaintiffs' counsel responded, "I think the Court acted properly," and suggested that the jury be polled as to their verdict on the second verdict form while they were still in the box, stating, "I don't think there would be then any question about it." Although plaintiffs' counsel did not renew any objection after the jury retired, he did make the perhaps joking but ultimately prophetic comment, "They might change their minds before they get back."

The jury returned with a verdict in the amount of $190,000 in favor of the plaintiffs, individually, and for $0 in favor of the estate. Asked if he had any objection, plaintiffs' counsel requested that the jurors be polled, and they affirmed the verdict. After the polling, plaintiffs' counsel responded to a question from the trial court, "Anything else from the plaintiff?" with "No, your honor." The jury was then discharged.

The trial court did not enter judgment on the jury verdict until October 16, approximately 18 days after the verdict and discharge of the jury. Before entering judgment, the trial court indicated to the parties its intention to double the amount of the jury's verdict sua sponte, apparently concluding that the jury intended to award $190,000 to each plaintiff rather than $190,000 in total. Judgment was entered in the amount of $380,000 over Ford's objection. Ford also objected to this action in its motion for new trial and j.n.o.v., and the trial court denied the motion on this basis, stating that it returned the jury to the jury room "to correct the form of the verdict, not the substance thereof."

(a) We find no merit in Ford's assertion that it was entitled to a mistrial on the basis of the trial court's comments to the jury regard-

ing the first, rejected jury verdict. While the trial court cannot comment on or express an opinion regarding the evidence, OCGA § 9-10-7, and cannot express approval or disapproval of a verdict, OCGA § 9-10-8, the trial court's remarks here did not rise to that level. The text of the discussion does not show that the trial court commented on the evidence or expressed an opinion regarding the verdict, other than agreeing with counsel that it was "backwards" or inconsistent with the evidence and void. "Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." (Citations and punctuation omitted.) *Corley v. State*, 192 Ga. App. 35, 37 (3) (383 SE2d 586) (1989); see also *Ramco Roofing &c. Co. v. Kaminsky*, 156 Ga. App. 708, 709 (2) (275 SE2d 764) (1980). In determining whether the jury can clarify a verdict in the jury box, as permitted by *Suber v. Fountain*, 151 Ga. App. 283, 291 (3) (259 SE2d 685) (1979), see Division (5) (b), the trial court must necessarily question the jurors.

(b) The law governing the correction of improper verdicts is clear. As to the first verdict, the parties and the court acknowledged on the record that it was not supported by the evidence and was improper. "Where an inconsistent and void verdict is returned by the jury, it is proper for the trial judge to refuse to receive the verdict, and to require them to return for further deliberations, under proper instructions. (Cits.) [Cit.] See OCGA §§ 9-12-4; 9-12-8." (Punctuation omitted.) *Kemp v. Bell-View, Inc.*, 179 Ga. App. 577, 581 (346 SE2d 923) (1986). See also *Kendall v. Curtis*, 194 Ga. App. 37, 38 (1) (389 SE2d 550) (1989) (proper to require jury to redeliberate, incorrect to "mold the verdict originally returned by the jury.").

Plaintiffs' counsel failed to point out any inconsistency or ambiguity in the second verdict, even after the jury was polled. Had plaintiffs raised this objection at the proper time, the trial court could have once again sent the jury back to correct their verdict, or, alternatively, could have inquired of the jury before their dispersal, determined their true intent, and corrected the verdict accordingly. *Suber v. Fountain*, supra at 291 (3).

In *First Union Nat. Bank v. Boykin*, 216 Ga. App. 732, 735 (1) (455 SE2d 406) (1995), this Court noted the rule that "since the jury dispersed before clarifying this substantive issue, the trial court lost authority to correct or otherwise amend the seemingly inconsistent verdict. [Cit.]" A new trial was not required, however, because the appellant had waived any challenge to the verdict by its failure to object. Id. "[U]pon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to object." (Citations and punctuation omitted.) *LaBanz v. Bank South &c.*, 198 Ga. App. 79, 82 (1) (400 SE2d 357) (1990).

"[O]nce the jury has dispersed the trial judge has no power

either to add to or to take from their findings, and has not the power, by amendment or reformation, to supply substantial omissions or make substantial changes in the verdict as rendered by the jury. . . . Further, a verdict may not be amended in matter of substance after it has been received and recorded and the jury has dispersed. OCGA § 9-12-7." (Citations and punctuation omitted.) *Force v. McGeachy*, 186 Ga. App. 781, 784 (368 SE2d 777) (1988). It is clear that the actual dollar amount of the jury's verdict, whatever its basis, is not a matter of mere "form," as the trial court stated, but the very substance of the verdict. Id.; *French Quarter v. Peterson Young Self & Asselin*, 220 Ga. App. 852, 853 (1) (471 SE2d 9) (1996); *Crawford v. Presbyterian Home*, 216 Ga. App. 54, 56 (4) (453 SE2d 480) (1995). While it is certainly possible that the jury intended *each* of the plaintiffs to recover $190,000, it is also possible, as plaintiffs' counsel observed, that the jurors simply "changed their minds" upon further deliberation. Before the jury was sent back, there was explicit discussion of the jury's intent to return a verdict "for the full value of the life of the decedent." Any attempt to divine the jurors' thought processes in awarding the full value of the decedent's life would be mere speculation and guesswork, now that the jury has dispersed.

The trial court cannot rely on the rejected verdict to obtain a dollar amount with which to alter an apparently legal and consistent second verdict. See *Harris v. Tatum*, 216 Ga. App. 607, 611 (3) (455 SE2d 124) (1995). The trial court agreed with both parties that the first verdict was improper and returned the jury for further deliberations; that verdict therefore became a nullity with the full consent of the parties. The trial court erred in sua sponte doubling the jury's verdict, and we must remand this case with the direction that the trial court enter judgment on the jury's verdict in the amount of $190,000.

*Judgment affirmed in part, reversed in part, and remanded with direction. Andrews, C. J., concurs. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I fully concur in Divisions 1 through 3 and 5, and agree with the result in Division 4. I write separately only to note that I do not agree with the majority's criticism of *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616 (423 SE2d 659) (1992).

DECIDED FEBRUARY 18, 1997 —
RECONSIDERATION DENIED MARCH 5, 1997 — 

*Long, Weinberg, Ansley & Wheeler, Earl W. Gunn, Charles K.*

*Reed*, for appellant.
*Leon A. Wilson II*, for appellees.