### A02A1658. QUEEN v. LAMBERT.
(577 SE2d 72)

Ellington, Judge.

Leonard H. Queen appeals from the trial court order denying his motion for judgment notwithstanding the jury verdict in favor of Lisa J. Lambert, who sued Queen for fraud. Queen contends the verdict was contradictory, the trial court gave an erroneous jury charge, and the trial court erred in denying his motion for directed verdict. Finding no reversible error, we affirm.

Construing the evidence most favorably to Lambert,[1] the record shows that Queen was Lambert's attorney. Lambert sought his counsel in early 1996 when her mother, who had been diagnosed with Alzheimer's disease, required nursing home care. Lambert feared the State would take the family home to pay for her mother's care. Queen advised Lambert to transfer the property into her name by forging her deceased father's signature to the deed and backdating it. Queen prepared the documents, instructed Lambert to sign, and had his wife, Linda Queen, notarize the signatures. Although Lambert knew she should not forge her father's name, Queen explained that it "wasn't really wrong" because she had no siblings to contest the transfer and her father had intended the house to pass to her eventually.

Queen did not tell Lambert how much she would owe him for his services, although he later paid him $250. He told her "don't worry about it." Instead, Lambert, who was a waitress, regularly bought dinner for Queen's family at the restaurant where she worked. In

---

[1] The standard of review of a directed verdict and a judgment n.o.v. is the same, and "a directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." (Citations omitted.) *St. Paul Mercury Ins. Co. v. Meeks,* 270 Ga. 136, 137 (1) (508 SE2d 646) (1998).

time, Queen became a trusted "father figure" to Lambert. He even asked her to move into his house to take care of his children.

In early 1998, Lambert was arrested and charged with DUI. She called Queen and told him she was afraid that, because she was in jail and not working, she would lose the house. Queen told Lambert that he could help her get out of her DUI charges if she would do him a favor and help him "set somebody up." Lambert refused, fearing that Queen's actions could get her killed. Queen then suggested that Lambert transfer her house to him for "safekeeping" until "everything blew over." While in jail, Lambert transferred the property to Queen. Again, Queen never discussed his fees with Lambert. She did not know what her bill was until he presented her with a receipt, while in jail, for $1,570.

Sometime later, Lambert received a notice from the county that taxes on her home were past due. A friend of Lambert's offered to lend her money to pay the taxes, but Lambert explained that the house was in her attorney's name for safekeeping. Lambert and her friend then went to see Queen, who assured them both he would transfer the house back into Lambert's name. When Lambert suggested selling the house to her friend to satisfy her debts and pay her taxes, Queen said: "If anyone's going to get the house, I'm going to get the house."

A short time later, Lambert was arrested for driving on a suspended license. She called Queen, who was supposed to be helping her get a driving permit so that she could visit her mother in the nursing home. While Lambert was being bonded out of jail, Queen presented her with papers to sign, papers Lambert did not read but assumed were for her bail. Lambert realized the document she signed was a lease agreement when, a month later, she got a copy of it with a letter demanding past due rent. Lambert and a friend came up with $500 to apply toward the rent, but Lambert was unable to afford to continue paying Queen, whom she now owed over $5,000. When Lambert failed to pay rent as demanded, Queen had her evicted. Queen then sold the house for $30,000 to Carl Jones, even though its estimated value was over twice that amount.

1. In his first enumeration of error, Queen contends he is entitled to a new trial because the jury's verdict was contradictory. Initially the jury returned a written verdict awarding $30,318.04 in damages to Lambert on her claim for fraud in tort. The jury also cancelled the deed transferring the property from Lambert to Queen even though it found that Jones was a bona fide purchaser.[2] The

---

[2] This is the only contradiction apparent in the verdict as initially rendered. Queen argues that the jury, by finding Queen liable for fraud in tort only (and not in equity), impliedly found that Lambert had "unclean hands" and was equally at fault. This, he con-

court discussed the verdict with counsel, who agreed the jury should be recharged as to the portions of the verdict that were conflicting. Following the recharge, the jury revised its verdict to state: "Should the deed transferring title to the Defendant, Leonard H. Queen, from the Plaintiff be canceled? Answer: No." Queen voiced no objection to the form of the revised verdict. The court then asked if there was anything else he needed to raise with the jury before they were dismissed, to which Queen responded, "No." Under these circumstances, "the meaning and effect of the [revised] verdict must have been clear to the parties. If either party felt the verdict was vague or ambiguous, objection should have been made when the verdict was returned so that the jury could clarify its meaning." (Citations omitted.) *Todhunter v. Price*, 248 Ga. 411, 412-413 (1) (283 SE2d 864) (1981). By failing to object, Queen waived his right to challenge any inconsistency in the revised verdict. Id. at 413 (1); *First Union Nat. Bank v. Boykin*, 216 Ga. App. 732, 735 (1) (455 SE2d 406) (1995).

2. Queen contends he was entitled to a directed verdict because Lambert failed to read the documents she signed, thereby failing to satisfy the due diligence element of her fraud case. Queen was Lambert's attorney. The attorney-client relationship is a confidential relationship imposing on the attorney the utmost duty of good faith and loyalty. See *Tante v. Herring*, 264 Ga. 694, 696 (2) (453 SE2d 686) (1994). Under Georgia law, a confidential relationship imposes a greater duty on the parties to reveal what should be revealed and a lessened duty to discover independently what could have been discovered through the exercise of ordinary care. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847-848 (1) (507 SE2d 411) (1998).

Queen argues that his client, a waitress with no business experience, should have doubted the import of the legal documents he prepared for her signature; that she should not have relied on his legal advice; in short, that a client should not expect a lawyer to act in her best interest.[3] The evidence shows, however, that Lambert did not read the lease agreement she signed because her attorney failed to disclose that it was not, as she assumed, a bail document. Whether

---

tends, invalidates the jury's finding that Queen held the property for Lambert in an implied trust. However, another explanation equally consistent with the verdict is that the jury did not find Queen liable for fraud in equity because the remedy of fraud in tort afforded Lambert the relief she sought. "Verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." OCGA § 9-12-4.

[3] This argument is founded upon an assumption that a lawyer may behave unethically, which we find repugnant. Rule 1.7 of the Georgia Rules of Professional Conduct provides that a lawyer owes a duty of loyalty to the client and shall not represent a client under circumstances where his own interests conflict with those of the client. The maximum penalty for violating this rule is disbarment.

this was reasonable, considering she was being bailed out of jail at the time, was for the jury to decide. The evidence also shows that Lambert did not read the deed transferring the property to Queen because she trusted her attorney to do as he promised — to reconvey the property to her after her DUI case was resolved. Whether her failure to read[4] the deed showed a lack of diligence under these circumstances was for the jury to decide. See *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 360 (4) (518 SE2d 154) (1999) (questions of due diligence are generally for the jury to decide).

3. Queen contends that the jury charge on fraud in tort failed to adequately instruct the jury on the element of due diligence. Queen failed to preserve exceptions to the charge. Moreover, the court gave each of the fraud charges Queen requested in writing, the very charges about which he now complains. As the Supreme Court explained:

> In a civil case, a party may not be heard to complain of the giving or the failure to give a jury instruction unless the party objects before the jury returns its verdict and distinctly states an objection and the grounds for it. The failure to except before verdict[ ] generally is a waiver of any defects in a charge absent a substantial error blatantly apparent and prejudicial, resulting in a gross miscarriage of justice. But, even the review of substantial error under OCGA § 5-5-24 (c) is not available when the giving of an instruction, or the failure to give an instruction, is induced during trial by counsel for the complaining party or specifically acquiesced in by counsel.

(Citations omitted.) *Moody v. Dykes*, 269 Ga. 217, 219-220 (3) (496 SE2d 907) (1998). We find no reversible error.

*Judgment affirmed. Smith, C. J., and Eldridge, J., concur.*

DECIDED JANUARY 30, 2003.

*Smith, Wallis & Scott, Christopher B. Scott*, for appellant.
*Leonard H. Queen, Sr.*, pro se.

---

[4] Moreover, even if Lambert had read the deed, it only would have informed her of what she already knew – that possession of her home was passing to Queen. The fact that the deed did not contain a "reverter clause," as Queen argues, would have been meaningless to her. Moreover, such a clause is not necessary to enforce a constructive trust since it is a trust implied from the circumstances. See OCGA § 53-12-93; *Edwards v. Edwards*, 267 Ga. 780, 781-782 (2) (482 SE2d 701) (1997).

*Susan A. Reif, Lisa J. Krisher, Phyllis J. Holmen, Mary I. Dicker-son,* for appellee.